**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CECILIA AGUILAR FERMIN; ENEDINO MATEO DIAZ AGUILAR, *Petitioners*, v. WILLIAM P. BARR, Attorney General, *Respondent.* | No. 18-70855 Agency Nos. A208-604-206 A208-604-207 |
| CECILIA AGUILAR FERMIN, *Petitioner*, v. WILLIAM P. BARR, Attorney General, *Respondent.* | No. 18-73266 Agency No. A208-604-206 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 13, 2020[*]
Pasadena, California

Filed May 5, 2020

Before: Mary M. Schroeder, Jay S. Bybee, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[**]

### Immigration

Denying Cecilia Aguilar Fermin's petitions for review of
the Board of Immigration Appeals' denial of asylum and
related relief, as well as the denial of her motion to reopen
seeking termination of proceedings in light of *Pereira v.
Sessions*, 138 S. Ct. 2105 (2018), the panel concluded that
substantial evidence supported the denial of relief, and held
that a Notice to Appear ("NTA") lacking the time, date, and
location of a petitioner's initial removal hearing does not
deprive the agency of jurisdiction over removal proceedings.

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

The panel concluded that the evidence did not compel the conclusion that Aguilar was credible, for purposes of asylum and withholding relief, due to inconsistencies and implausibilities in the record. The panel also concluded that substantial evidence supported the Board's determination that Aguilar could relocate in Mexico to avoid future torture.

The panel also concluded that the Board did not abuse its discretion in denying Aguilar's motion to reopen for termination of proceedings, in light of the Supreme Court's decision in *Pereira.* Fermin contended that the Supreme Court in *Pereira* redefined the requirements for a valid NTA and rendered hers insufficient to vest the immigration court with jurisdiction because it lacked the time, date, and location of her hearing. The panel rejected Fermin's contention, noting that *Pereira* addressed the requirements for an NTA in regards to the stop-time rule under 8 U.S.C. § 1229b(d)(1)(A), and not the requirements for an NTA to vest an immigration court with jurisdiction under 8 C.F.R. § 1003.14. The panel observed that in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), this court held that *Pereira* simply has no application in challenges to immigration-court jurisdiction because such jurisdiction is defined by regulation, whereas *Pereira* interpreted a provision of the INA. The panel further observed that *Karingithi* concluded that an NTA need not include time and date information to satisfy the regulations, because 8 C.F.R. § 1003.15(b) does not require that the time and date of proceedings appear in the initial notice, and 8 C.F.R. §1003.18(b) compels inclusion of such information only *where practicable*.

The panel noted that the only difference between *Karingithi* and the present case is that Aguilar's NTA was not only missing the time and the date, but also the location.

Aguilar contended that the omission of location information was different because 8 C.F.R. § 1003.15(b)(6) provides that the NTA *must* also include the address of the immigration court. The panel considered the Board's recent opinion in *Matter of Rosales Vargas*, 27 I. & N. Dec. 745 (B.I.A. 2020), rejecting this argument. There, the Board pointed out that § 1003.14(a) vests jurisdiction when a charging document is filed, but provides no other specifications regarding the scope of the document, and nothing in 8 C.F.R. § 1003.15(b)(6) mandates that the address of the immigration court is a jurisdictional requirement or that it cannot be provided subsequent to service of the NTA. The Board found that its rules, including § 1003.15, were promulgated as procedural rules and should be read in the context of other internal docketing, procedural, and venue rules for the immigration courts. Accordingly, the Board read § 1003.15(b)(6) in conjunction with § 1003.18(b), which provides that if time, place, and date information is not contained in the NTA, the immigration court shall schedule the initial removal hearing and provide notice to the government and the alien of the time, place, and date of hearing. The Board thus concluded that § 1003.18(b) anticipates that when the address of the immigration court is not included in the NTA, the court can provide notice of that information at a later time in a subsequent Notice of Hearing.

The panel pointed out that in *Karingithi* this court also read § 1003.15(b)(6) in conjunction with § 1003.18(b). The panel observed that *Rosales Vargas* and *Karingithi* are consistent, as under both decisions, an omission of some of the information required by § 1003.14(a) and § 1003.15(b)(6) can be cured and is not fatal. The panel stated that, as in *Karingithi*, it could find nothing in *Rosales Vargas* to suggest that the Board's interpretation of its own regulation was

"plainly erroneous," "inconsistent with the regulation," or did "not reflect the agency's fair and considered judgment."

The panel acknowledged that § 1003.15(b)(6) appears to be a clear statement that an NTA must include the address of the immigration court, but stated that the Board has carefully explained why that provision does not deprive an immigration court of jurisdiction. Given that the regulations expressly state that the omission of an address from an NTA may be fixed by a later hearing notice, the panel concluded that it was reasonable to construe the regulatory provisions as allowing the immigration judge to assert jurisdiction in circumstances, such as this, where Aguilar was provided complete notice at a later time and appeared for her hearings. The panel held that the Board therefore did not err in concluding that the Immigration Court had jurisdiction over her case.

Based on the same reasoning, the panel also gave deference to the Board's interpretation in *Rosales Vargas* of a similar provision, § 1003.14(a), which separately requires a charging document to include a certificate of service indicating the immigration court in which the charging document was filed.

---

## COUNSEL

Christopher J. Stender, Federal Immigration Counselors APC, Phoenix, Arizona, for Petitioners.

Enitan O. Otunla, Trial Attorney; Bernard A. Joseph, Senior Litigation Counsel; Joseph H. Hunt, Assistant Attorney

General; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

BYBEE, Circuit Judge:

Petitioner Cecilia Aguilar Fermin fled Mexico after being threatened by persons seeking to recruit her brother-in-law into a gang. She and her minor son arrived in the United States without documentation and were charged as inadmissible under 8 U.S.C. § 1182(a)(7). Aguilar conceded removability but applied for asylum, withholding of removal (withholding), and Convention Against Torture (CAT) relief. An immigration judge (IJ) denied Aguilar relief and ordered her and her son removed. The Board of Immigration Affairs (BIA) affirmed. In No. 18-70855, Aguilar now petitions for review of that decision.[1]

To initiate removal proceedings, the Department of Homeland Security (DHS) sent Aguilar a notice to appear (NTA). The NTA did not provide Aguilar with the time, date, or location of her removal hearing, though that information was later provided to her and Aguilar appeared at her hearings. Aguilar alleges that this deficiency in the NTA rendered the immigration court without jurisdiction to order her removed. The BIA disagreed. In No. 18-73266, Aguilar now petitions for review of that decision as well.

---

[1] As a derivative beneficiary of Aguilar's application for relief before the IJ, Aguilar's minor son is a co-petitioner in this petition for review.

Because we conclude that the decision to remove Aguilar is supported by substantial evidence, and because we agree with the BIA that an initial NTA need not contain time, date, and place information to vest an immigration court with jurisdiction if such information is provided before the hearing, we deny both petitions.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner Cecilia Aguilar Fermin is a native and citizen of Mexico who, until 2015, lived in El Naranjo, Guerrero, with her minor son, sister, and brother-in-law. Her brother-in-law previously served as a soldier in the Mexican armed forces. Because military experience is valuable to gangs, Aguilar's brother-in-law began facing pressure from a gang to join their ranks. When he refused, the gang threatened to kill his family. In response to this threat, the family fled.

Aguilar and her son moved to the town of Palos Altos, Guerrero, where they lived for several months. While living in Palos Altos, Aguilar claims that she continued to receive threats relating to her brother-in-law. For example, on one occasion three men threatened to kill her and her son if her brother-in-law did not join their gang. These same men also demanded a one million peso ransom from Aguilar, though they allegedly did so through a ransom note that provided no instruction to Aguilar on whom to pay or how to pay it. Aguilar reported this incident to the local police, who conducted an investigation but ultimately made no arrests.

Aguilar then fled Palos Altos with her son and traveled to Mexico City, where she stayed with her sister-in-law for several weeks. She received no threats while in Mexico City. A few weeks later she returned briefly to Palos Altos, where

she claims she was again threatened. At this point, she fled to the United States.

On December 8, 2015, Aguilar and her son arrived at the San Ysidro port of entry without valid entry documents. Two days later, they were served an NTA charging them as removable under § 212(a)(7) of the Immigration and Nationality Act (INA), which renders inadmissible all persons who enter without appropriate documentation. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). The NTA did not provide a date and time for Aguilar's removal hearing, stating only that the hearing would occur "at a date to be set [and] at a time to be set." It also did not provide the address of the immigration court at which she was to appear, stating only that the hearing would be "[a]t a place and time to be determined." Three months later, on March 14, 2016, Aguilar received a supplemental notice providing the date, time, and location of her hearing.

After a full hearing—in which Aguilar was the only witness to testify—the IJ found Aguilar inadmissible as charged and denied her petition for asylum, withholding, and CAT relief. The IJ made an adverse credibility finding against Aguilar based on inconsistencies and implausibilities in her testimony. For example, the IJ noted that Aguilar averred in her asylum application that she had been personally threatened by the gang, even though when questioned at the port of entry, Aguilar stated that only her brother-in-law had received threats. Similarly, when asked on cross-examination whether "she ever received a piece of paper" from the gang, she replied that she had not, in spite of the assertion in her asylum application that the gang had given her a written ransom note for one million pesos. The IJ found Aguilar's explanations for these inconsistencies—the

former inconsistency was because "she was nervous" and the latter was because "she had forgotten"—unconvincing. The IJ also found aspects of Aguilar's testimony implausible. For example, Aguilar claimed that the Mexican government would not protect her from future persecution because the local police were "in cahoots with" the gangs, yet she had chosen to report the threats she received in Mexico to the local police, who responded by promptly investigating her claim. The IJ also expressed doubts about Aguilar's claim that she received a ransom note providing no instructions. Based on the adverse credibility finding, the IJ denied Aguilar's asylum and withholding claims.**[2]** The IJ denied Aguilar CAT relief because (1) Aguilar failed to show that it was more likely than not that she would be tortured upon return to Mexico and (2) she could successfully internally relocate. Aguilar appealed the IJ's decision to the BIA.

Citing *Matter of Burbano*, 20 I. & N. Dec. 872 (B.I.A. 1994), the BIA "adopt[ed] and affirm[ed] the decision of the Immigration Judge" in full. It concluded that "[t]he Immigration Judge provided sufficient bases to support an adverse credibility finding," highlighting Aguilar's inconsistent testimony about receiving a ransom note. The BIA also agreed with the IJ's alternative holding that Aguilar "did not establish that the threats, harassment, recruitment, and extortion that she and her family suffered and fear in Mexico was or will be on account of a ground protected by

---

**[2]** In the alternative, the IJ also held that even if Aguilar were credible, she was ineligible for asylum and withholding because (1) she failed to establish a nexus between the threat of violence she suffered and her membership in a particularized social group (PSG), (2) she failed to show that the Mexican government was unwilling or unable to protect her, and (3) she could internally relocate within Mexico.

the" INA. The BIA affirmed the denial of CAT relief because Aguilar's "fear of torture in Mexico is speculative and unsupported by adequate objective evidence."

On June 21, 2018, several months after the BIA's decision, the Supreme Court decided *Pereira v. Sessions*, in which it held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a notice to appear under section 1229(a)." 138 S. Ct. 2105, 2113–14 (2018) (internal quotation marks omitted). Aguilar then filed with the BIA a motion to reopen the proceedings in her case, arguing that the NTA she had received was inadequate under *Pereira*. Although *Pereira* concerned the stop-time rule under 8 U.S.C. § 1229b—a provision of the INA irrelevant to Aguilar's petition—Aguilar argued that *Pereira*'s reasoning should be extended to other provisions of immigration law. Specifically, Aguilar argued that *Pereira* should be applied to 8 C.F.R. § 1003.14, which vests jurisdiction in an immigration court upon the filing of a "charging document," a term defined to include an NTA. *See* 8 C.F.R. § 1003.13. Thus, Aguilar claimed, because the NTA here was insufficient to satisfy *Pereira*, it was insufficient to vest jurisdiction in the immigration court, and so Aguilar's ordered removal was in error.

The BIA disagreed. It held that *Pereira*'s holding did *not* extend to matters of jurisdiction. Instead, the BIA cited its own 2018 decision in *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 442–47 (B.I.A. 2018), to conclude that an NTA "that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceeding . . . so long as a notice of hearing specifying this information is later sent." Because it

was "undisputed that [Aguilar] received proper notices of her removal hearings, which provided the dates, times and locations of [her] scheduled hearings," the BIA concluded that the immigration court had jurisdiction, and thus the removal order was proper and no grounds existed to reopen the proceedings.

Aguilar timely petitioned for review of both decisions.

## II. JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction over the appeal of the IJ's removal order under 8 C.F.R. § 1003.1(b)(3). The BIA had jurisdiction over Aguilar's motion to reopen proceedings under 8 C.F.R. § 1003.2(a). This Court has jurisdiction under 8 U.S.C. § 1252.

"Where, as here, the BIA cites *Burbano* and also provides its own review of the evidence and law, we review both the IJ's and the BIA's decisions." *Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011). "We review denials of asylum, withholding of removal, and CAT relief for substantial evidence and will uphold a denial supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Ling Huang v. Holder*, 744 F.3d 1149, 1152 (9th Cir. 2014) (internal quotation marks omitted). "[A]n adverse credibility finding is conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Bassene v. Holder*, 737 F.3d 530, 536 (9th Cir. 2013) (internal quotation marks omitted).

A denial of a motion to reopen is reviewed for abuse of discretion. *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016). A decision is an abuse of discretion if it is "arbitrary,

irrational, or contrary to law." *Id*.; *see also Koon v. United States*, 518 U.S. 81, 100 (1996) ("A[] court by definition abuses its discretion when it makes an error of law."). Purely legal questions are reviewed de novo. *Alali-Amin v. Mukasey*, 523 F.3d 1039, 1041 (9th Cir. 2008).

## III. ANALYSIS

Aguilar appeals two decisions of the BIA: (1) the denial of asylum, withholding, and CAT relief, and (2) the denial of her motion to reopen proceedings. We will take each issue in turn.

## A

To establish eligibility for asylum, Aguilar must show that she is unable or unwilling to return to Mexico "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Aguilar bears the burden to establish eligibility for relief. 8 C.F.R. § 208.13(a). Aguilar may satisfy her burden with testimony alone only if her "'testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee.'" *Ming Dai v. Sessions*, 884 F.3d 858, 867 (9th Cir. 2018) (quoting 8 U.S.C. § 1158(b)(1)(B)(ii)).

Here, the IJ found that Aguilar was not credible, and the BIA agreed. They each identified inconsistencies and implausibilities in Aguilar's account, some of which reach the heart of her claim for relief. *See Shrestha v. Holder*, 590 F.3d 1034, 1047 (9th Cir. 2010) ("[W]hen an inconsistency is at the heart of the claim it doubtless is of great weight."). As is

required, Aguilar was given an opportunity to explain the inconsistencies and implausibilities in her testimony, *see Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds as stated in Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165 (2d Cir. 2008) (per curiam), but the IJ found her explanations, including that "she was nervous" and "she had forgotten" certain facts, were unconvincing.

We may only upset this adverse credibility finding if we conclude that "any reasonable adjudicator would be compelled" to do so. *Bassene*, 737 F.3d at 536 (internal quotation marks omitted). Nothing in the record compels that conclusion. The adverse credibility finding must stand. The BIA did not err in affirming the IJ's denial of Aguilar's claim for asylum.

Separately, to establish eligibility for withholding, Aguilar must "demonstrate[] a 'clear probability' that, if [she] returns to [her] home country, [her] 'life or freedom would be threatened' on account of race, religion, nationality, membership in a particular social group, or political opinion." *Singh-Kaur v. INS*, 183 F.3d 1147, 1149 (9th Cir. 1999) (citation omitted). As with asylum, an adverse credibility finding may be grounds to deny a petition for withholding of removal. *See, e.g.*, *Husyev v. Mukasey*, 528 F.3d 1172, 1183 (9th Cir. 2008). Thus, as with the asylum claim, the BIA did not err in affirming the IJ's denial of Aguilar's claim for withholding.

For CAT relief, Aguilar must demonstrate "that it is more likely than not that [s]he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Relevant to this inquiry is whether "the applicant could

relocate to a part of the country of removal where . . . she is not likely to be tortured." *Id*. § 1208.16(c)(3)(ii). Though she claims she was threatened when living elsewhere in Mexico, Aguilar concedes that she was never threatened or harmed when living in Mexico City, and she acknowledges that she has family members who continue to live in Mexico City without issue. Thus, substantial evidence supports the conclusion that Aguilar could internally relocate within Mexico. The BIA did not err in affirming the IJ's denial of Aguilar's claim for CAT relief.

B

The BIA may grant a motion to reopen proceedings if the petitioner presents new evidence that "is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Here, Aguilar asserts that the Supreme Court's decision in *Pereira* provides grounds to reopen her case. She argues that *Pereira* redefined the requirements for a valid NTA and rendered the one issued here insufficient to vest the immigration court with jurisdiction.

Aguilar misreads *Pereira*. The Court in *Pereira* articulated the requirements for an NTA in regards to the stop-time rule under 8 U.S.C. § 1229b(d)(1)(A). It did not address the requirements for an NTA to vest an immigration court with jurisdiction under 8 C.F.R. § 1003.14. *See Pereira*, 138 S. Ct. at 2109–10. In *Karingithi v. Whitaker*, we considered whether, in light of *Pereira*, a "notice to appear [that] does not specify the time and date of the proceedings" is sufficient to vest an immigration court with jurisdiction over removal proceedings. 913 F.3d 1158, 1158 (9th Cir. 2019). We noted that immigration court jurisdiction is

defined by DOJ regulation, while *Pereira* interpreted a provision of the INA. *Id*. at 1160–61. Because the INA and the DOJ regulation define the term "notice to appear" slightly differently, we reasoned that case law interpreting the term in the former context does not control in the latter. *Id*. Accordingly, we held that "*Pereira* simply has no application" in challenges to immigration-court jurisdiction. *Id.* at 1161.

In *Karingithi*, we observed that "the regulation does not require that the time and date of proceedings appear in the initial notice." 913 F.3d at 1160 (citing 8 C.F.R. § 1003.15(b)). "Rather, the regulation compels inclusion of such information '*where practicable.*'" *Id.* (quoting 8 C.F.R. § 1003.18(b)). We concluded that "[a] notice to appear need not include time and date information to satisfy [the regulations]." *Id.* We also looked to the BIA's published decision in *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (B.I.A. 2018), to which we owed deference unless its interpretation of its regulation was "plainly erroneous," "inconsistent with the regulation," or did "not reflect the agency's fair and considered judgment." 913 F.3d at 1161 (quotation marks and citation omitted). We concluded that "*Bermudez-Cota* easily meets this standard and is consistent with our analysis." *Id.*

The only difference between this case and our decision in *Karingithi* is that Aguilar's NTA was not only missing the time and the date, but also the location. Aguilar argues that this omission is different from omitting the time and place because 8 C.F.R. § 1003.15(b)(6) provides that "The . . . Notice to Appear must also include . . . [t]he address of the Immigration Court."

The BIA has recently addressed Aguilar's argument in a published decision.  In *Matter of Rosales Vargas*, 27 I. & N. Dec. 745 (B.I.A. 2020), the BIA acknowledged that our decision in *Karingithi* "[d]id not explicitly address the specific issue raised here—whether a notice to appear that does not include the address of the Immigration Court where the notice to appear will be filed is sufficient to vest jurisdiction in the court." *Id.* at 748 (footnote omitted).[3]  The BIA rejected the argument Aguilar makes here.  It pointed out that § 1003.14(a) vests jurisdiction in an immigration judge "when a charging document is filed" and that sentence "provides no other specifications regarding the scope of the document." *Id.*  The BIA further observed that "nothing in 8 C.F.R. § 1003.15(b)(6) mandates that the address of the Immigration Court is a jurisdictional requirement or that it cannot be provided subsequent to the service of the notice to appear." *Id.* at 749.

Having concluded that compliance with § 1003.15(b)(6) was not a condition for vesting jurisdiction in the immigration court, the BIA considered "the consequences of omitting the 'place' information from the notice to appear" and "whether termination would be the appropriate remedy." *Id.* at 751. The BIA found that its rules "including § 1003.15 were promulgated as procedural rules for the Immigration Courts . . . . to outline the steps needed to docket a case . . . and to ensure the efficient administrative handling of cases." *Id.* at 752.  Accordingly, § 1003.15(b) "[should not be read] in isolation, but in the context of the other internal docketing,

---

[3] The BIA, on the other hand, had already addressed this issue in *Matter of Bermudez-Cota*, in which it concluded that an NTA lacking time and place information was not defective so long as that information was later provided. *See* 27 I. & N. Dec. at 447.

procedural, and venue rules for the Immigration Courts." *Id.* at 750. The BIA quoted § 1003.12, which provides that the rules "are promulgated to assist in the expeditious, fair, and proper resolution of matters coming before Immigration Judges," *id.* (quoting 8 C.F.R. § 1003.12), and a summary of an earlier version of the rules, which stated that "[t]he rules of procedure are interrelated" and "intended to be construed harmoniously," *id.* (quoting 57 Fed. Reg. 11,568, 11,568 (Apr. 6, 1992)). The BIA thought it appropriate to read § 1003.15(b)(6) "in conjunction with" § 1003.18(b). That latter section provides:

> [DHS] shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable. *If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing.*

8 C.F.R. § 1003.18(b) (emphasis added). The BIA concluded that

> the regulation anticipates that when the address of the Immigration Court is not included in the notice to appear, the court can provide notice of that information at a later time. Accordingly, we hold that a notice to appear that does not include the address of the

> Immigration Court can be remedied by a subsequent notice of hearing that includes that information.

*Rosales Vargas*, 27 I. & N. Dec. at 750.

In *Karingithi* we also read § 1003.15(b)(6) in conjunction with § 1003.18(b). 913 F.3d at 1160. *Rosales Vargas* and *Karingithi* are consistent. Under both decisions, an omission of some of the information required by § 1003.14(a) and § 1003.15(b)(6) can be cured and is not fatal. As in *Karingithi*, we can find nothing in *Rosales Vargas* that suggests that the BIA's interpretation of its own regulation is "plainly erroneous," "inconsistent with the regulation," or does "not reflect the agency's fair and considered judgment." *Id.* at 1161. We acknowledge that § 1003.15(b)(6) appears to be a clear statement that a notice to appear must include the address of the Immigration Court, but the BIA has carefully explained why that provision does not deprive an immigration court of jurisdiction.[4] The question then, is what is the remedy when the address is omitted from the NTA?—and the BIA has fully explained that § 1003.18(b) supplies the

---

[4] As Aguilar notes, § 1003.14 separately requires a charging document to include "a certificate showing service on the opposing party . . . which indicates the Immigration Court in which the charging document is filed." 8 C.F.R. §1003.14(a). For the same reasons that it held that lack of time, date, and place information in violation of § 1003.15 did not strip an immigration court of jurisdiction, the BIA in *Rosales Vargas* also held that "lack of compliance with this portion of [§1003.14(a)], standing alone or read with the other regulations, does not provide a reason for terminating proceedings." 27 I. & N. Dec. at 753 (footnote omitted). Because nothing in this interpretation of the regulation is "plainly erroneous," is "inconsistent with the regulation," or does "not reflect the agency's fair and considered judgment," *Karingithi*, 913 F.3d at 1161, we give deference to this holding as well.

appropriate remedy: providing the alien and the government with the complete notice at a later time.  Aguilar was provided with that notice and appeared for her scheduled hearings.  Given that the regulations expressly state that the omission of an address from an NTA may be fixed by a later hearing notice, it is reasonable to construe the regulatory provisions about when jurisdiction vests as allowing the IJ to assert jurisdiction in such circumstances.

We thus hold that there was no error in the BIA's determination that the lack of time, date, and place in the NTA sent to Aguilar did not deprive the immigration court of jurisdiction over her case.  Accordingly, we conclude that the BIA did not abuse its discretion in denying Aguilar's motion to reopen proceedings, and the petition for review of that decision is denied.

## IV. CONCLUSION

The petition for review of Aguilar's asylum, withholding, and CAT claims is denied (No. 18-70855).  The petition for review of the motion to reopen is denied as well (No. 18-73266).

**PETITIONS DENIED.**