**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

JUAN CARLOS BASTIDE-HERNANDEZ,
AKA Jesus Chavez-Gongoria, AKA
Domingo Chavez-Lopez, AKA
Francisco Soto Hernandez,
*Defendant-Appellee.*

No. 19-30006

D.C. No.
1:18-cr-02050-
SAB-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Stanley Allen Bastian, Chief District Judge, Presiding

Argued and Submitted December 7, 2020
San Francisco, California

Filed February 2, 2021

Before: Danny J. Boggs,[*] Milan D. Smith, Jr., and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Boggs;
Dissent by Judge Milan D. Smith, Jr.

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for
the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY**

### Criminal Law

The panel reversed the district court's dismissal of an indictment charging illegal reentry after removal in violation of 8 U.S.C. § 1326, and remanded, in a case in which the district court held that a defective notice to appear (NTA) lacking time and date information did not provide the immigration court with jurisdiction to enter an order of removal.

Observing that *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), and *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020), created some confusion as to when jurisdiction actually vests, the panel held that 8 C.F.R. § 1003.14(a) means what it says and controls:   the jurisdiction of the immigration court vests upon the filing of an NTA, even one that does not at that time inform the alien of the time, date, and location of the hearing.

The panel wrote that while a defective NTA does not affect jurisdiction, it can create due-process violations. The panel wrote that because the defendant chose not to address in his brief any of the requirements under 8 U.S.C. § 1326(d) for a collateral attack on the validity of the underlying removal, he failed to show that he can satisfy the § 1326(d) requirements based on the NTA's lack of date and time information.   The panel wrote that on remand, which is required because the basis for the district court's dismissal was invalid, the defendant may be able to collaterally attack

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the underlying removal order on other grounds if he can meet the requirements of § 1326(d).

Dissenting, Judge M. Smith wrote that *Karingithi* and *Aguilar Fermin* compel the conclusion that dismissal of the indictment was proper because the immigration court never cured the omission of the date and time of the hearing from the NTA, thereby depriving the immigration court of jurisdiction to issue a removal order.

## COUNSEL

Richard C. Burson (argued), Assistant United States Attorney; William D. Hyslop, United States Attorney; United States Attorney's Office, Yakima, Washington; for Plaintiff-Appellant.

Paul E. Shelton (argued), Federal Defenders of Eastern Washington, Yakima, Washington, for Defendant-Appellee.

**OPINION**

BOGGS, Circuit Judge:

The United States challenges the district court's dismissal of an indictment charging Juan Carlos Bastide-Hernandez with illegal reentry after removal, in violation of 8 U.S.C. § 1326. We reverse.

I

Bastide-Hernandez, a citizen and native of Mexico, first entered the United States without inspection in 1995 when he was 17 years old. Bastide-Hernandez, who is married to a United States citizen and has a United States citizen teenage son, has had extensive interaction with the immigration system. In April 2006, Bastide-Hernandez was placed in removal proceedings by U.S. Immigration and Customs Enforcement ("ICE"). On April 26, ICE served him two Notices to Appear ("NTA"), the first sent to his residence and the second to his updated address at the immigration detention facility in Tacoma, Washington. Neither NTA specified the date and time of the hearing, instead stating that the hearing would occur "on a date to be set [and] a time to be set." On May 12, the immigration court sent Bastide-Hernandez a curative Notice of Hearing ("NOH") by fax to an unidentified custodial officer at the detention center, which set the hearing date for June 14, 2006. Bastide-Hernandez denies ever receiving the NOH and there is no paperwork indicating when or if the unnamed custodial officer in fact served the NOH on Bastide-Hernandez.

The removal hearing was held on June 14. What actually occurred during the hearing is unknown, as the government failed to produce the requested hearing transcript, so we have

no specific evidence that Bastide-Hernandez was in attendance. We do know that the immigration court entered an order of removal (with no indication that it was issued in absentia), which was the basis for Bastide-Hernandez's 2018 § 1326 indictment for illegal re-entry. The district court dismissed the indictment, holding that a defective NTA lacking time and date information did not provide the immigration court with jurisdiction to enter an order of removal.

## II

The district court's decision incorrectly relied on the reasoning of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and was issued prior to this court's decisions in *Karingithi v. Whittaker*, 913 F.3d 1158 (9th Cir. 2019), and *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020). Under *Karingithi* and *Aguilar Fermin,* a defective NTA does not divest the immigration court of jurisdiction. *Karingithi* held that regulations promulgated by the Attorney General[1] define when the jurisdiction of immigration courts vests, rather than the statute[2] authorizing those regulations. Failure to include the date and time of a removal hearing in an NTA does not deprive the immigration court of subject-matter jurisdiction so long as the information is provided in a subsequent NOH. *Karingithi*, 913 F.3d at 1161–62. Similarly, *Aguilar Fermin* held that failure to include the address of the immigration court in an NTA does not deprive the immigration court of jurisdiction, so long as a subsequent NOH provides that information. *Aguilar Fermin*, 958 F.3d

---

[1] 8 C.F.R. § 1003.14(a), 8 C.F.R. § 1003.15(b), and 8 C.F.R. § 1003.18(b).

[2] 8 U.S.C. § 1229

at 893–95.  The regulations provide that "[j]urisdiction vests . . . when a charging document is filed with the Immigration Court," 8 C.F.R. § 1003.14(a), and requires the NTA include "the time, place and date of the initial removal hearing, where practicable." 8 C.F.R. § 1003.18(b).

*Karingithi* and *Aguilar Fermin* have created some confusion as to when jurisdiction actually vests, as neither squarely held that jurisdiction vests immediately upon the filing of an NTA, despite the language of the regulations.  To clarify, we now hold that the regulation means what it says, and controls. The only logical way to interpret and apply *Karingithi* and *Aguilar Fermin* is that the jurisdiction of the immigration court vests upon the filing of an NTA, even one that does not at that time inform the alien of the time, date, and location of the hearing.  If this were not the case, upon the filing of an NTA jurisdiction would vest, but then would unvest if the NTA lacked required time, date, and location information, only to once again revest if a subsequent curative NOH provided that missing information. Jurisdiction is not so malleable.  Jurisdiction, for all its subtle complexities, is not ephemeral.  It either exists or it does not. Under *Karingithi* and *Aguilar Fermin,* we now hold that when an NTA is filed, jurisdiction exists and vests with the immigration court.

## III

While a defective NTA does not affect jurisdiction, it can create due-process violations.  A person is guilty of the offense of illegal reentry if he "has been denied admission, excluded, deported, or removed [from] the United States . . . and thereafter enters, attempts to enter, or is at any time found in, the United States."  8 U.S.C. § 1326(a).  Section 1326 specifically contemplates that defects in an original removal proceeding may vitiate a later criminal proceeding

under § 1326(a). A defendant who is prosecuted for violating this criminal statute "has a due process right to collaterally attack the underlying deportation order, because it serves as a predicate element of the crime for which he is charged." *United States v. Gonzales-Villalobos*, 724 F.3d 1125, 1129 (9th Cir. 2013).

To mount a collateral attack on the validity of an underlying removal order, the defendant must demonstrate that "(1) the [noncitizen] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); *see also United States v. Ochoa-Oregel*, 904 F.3d 682, 684 (9th Cir. 2018).

Here, the government claims that Bastide-Hernandez failed to meet any of the requirements of § 1326(d), including because he failed to exhaust his administrative remedies during the 2006 immigration proceeding and during a later 2014 immigration proceeding, and because he failed to show that his immigration proceedings were fundamentally unfair based on the NTA's lack of date and time information. Bastide-Hernandez claims on appeal that he did not need to satisfy any of the requirements of § 1326(d) because the immigration court lacked jurisdiction. He chose not to address any of the § 1326(d) requirements in his brief. Thus, he has failed to show that he can satisfy the § 1326(d) requirements based on the NTA's lack of date and time information. However, as discussed below in section IV, Bastide-Hernandez may be able to collaterally attack the underlying removal order on other grounds, if he can meet the requirements of § 1326(d).

Although exhaustion and deprivation of judicial review are two separate requirements, this court has recognized "three overlapping categories" that satisfy both: 1) the failure of an immigration judge to inform a noncitizen of his right to appeal his deportation order to the Board of Immigration Appeals ("BIA"); 2) the failure of an immigration judge to inform a noncitizen that he is eligible for a particular kind of discretionary relief; and 3) where an alleged waiver of the right to appeal to the BIA was not "considered and intelligent" under the Due Process clause of the Fifth Amendment. *Gonzales-Villalobos*, 724 F.3d at 1130–31. The government bears the burden of proving the validity of a waiver. *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010). This court "indulge[s] every reasonable presumption against waiver, and do[es] not presume acquiescence in the loss of fundamental rights." *Ibid.* (quotation marks and citation omitted).

To prove the third requirement, prejudice and fundamental unfairness exist if a noncitizen's "due process rights were violated by defects in the underlying deportation proceeding, and if he suffered prejudice as a result of the defects." *Ramos*, 623 F.3d at 680 (quotation marks and citation omitted). As clarified at oral argument, the existence of the three elements that are prerequisites to a § 1326(d) challenge has not yet been put in issue, as the case was dismissed on jurisdictional grounds.

IV

On remand, Bastide-Hernandez may be able to collaterally attack the underlying removal order, if he can meet the requirements of 8 U.S.C. § 1326(d). Relevant statutory and regulatory provisions provide that notice to the noncitizen shall be "given in person" or by mail to either the noncitizen or his counsel of record. *See* 8 U.S.C.

§ 1229(a)(1);  8  C.F.R.  § 1003.14(a);  and  8  C.F.R.
§ 1003.32(a).  The Executive Office of Immigration Review
("EOIR") operating manual promulgated by the Office of the
Chief Immigration Judge directs "that a NOH must be served
in person 'when practicable' and otherwise may be served
by mail; service by fax is not permitted."[3]  Though neither
the statute, regulations, nor manual are clear as to the effect
of a custodial officer giving a fax in person to the detainee,
we again note that to succeed under 8 U.S.C. § 1326(d), an
alien must demonstrate, in addition to the other two statutory
requirements, that "the entry of the order was fundamentally
unfair."

Also, we lack any record from the immigration-court
proceeding, so we do not know if the immigration judge
informed Bastide-Hernandez of his right to appeal to the
BIA or if Bastide-Hernandez might have been eligible for
discretionary relief and if he was, whether the immigration
judge so informed him.   Further, although Bastide-
Hernandez appears to have signed the waiver-of-right-to-
appeal box on the back of the NTA, the district court made
no finding as to whether the waiver was knowing and
intelligent, and Bastide-Hernandez does not address the
issue in his brief.

Additionally, questions may remain regarding actual
receipt of the fax by the custodian or by Bastide-Hernandez,
whether this is relevant under section 1326(d), and, if so,
whether Bastide-Hernandez was prejudiced by any service-
of-process  deficiencies  if  he  actually  appeared  by

---

[3] Office of the Chief Immigration Judge, Executive Office for
Immigration Review, "Uniform Docketing System Manual,"
(Dec. 2013), *available at:* https://www.justice.gov/sites/default/files/eoir/
legacy/2014/04/07/DocketManual_12_2013.pdf.

videoconference.  Because the district court's basis for dismissing the indictment was invalid, the case must be remanded for further proceedings, in accordance with the holdings in this opinion.  All factual matters and any additional legal challenges remain in the purview of the district court.

The district court is **REVERSED**, and the case **REMANDED**.

---

M. SMITH, Circuit Judge, dissenting:

In my view, *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), and *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020), compel the conclusion that dismissal of the indictment in this case was proper because the Immigration Court never cured the omission of the date and time of the hearing from Bastide-Hernandez's Notice to Appear (NTA), thereby depriving the Immigration Court of jurisdiction to issue a removal order.  Without a valid removal order, the Government was unable to establish one of the elements of the charged offense of illegal reentry.  Accordingly, I would affirm the district court.

## ANALYSIS

### A.

In *Karingithi*, we held that "the regulations define when jurisdiction vests" in the immigration court.  913 F.3d at 1160.  The regulations state that jurisdiction vests upon the filing of an NTA, and they require that the NTA include "the time, place and date of the initial removal hearing, where practicable."  8 C.F.R. § 1003.18(b).  When including the

information in the NTA is impracticable, "the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing."   8 C.F.R. § 1003.18(b).      There is no such exception for impracticability with respect to the requirement that the NTA include "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear." 8 C.F.R. § 1003.15(b)(6). The address of the court where the NTA will be filed may or may not be the same as the place where the hearing will be held; the two regulations thus refer to different information.[1]  In practical terms, the address of the court where the NTA will be filed is important because that is where the alien must file his own documents, such as motions to the IJ and changes of address.

The *Karingithi* court held that because the regulations require the inclusion of the date, time, and place of the hearing only where practicable, omission of that information in the NTA does not deprive the immigration court of jurisdiction to issue an order of removal.    Importantly, *Karingithi*'s holding was specifically conditioned on a critical fact in the case: that the alien later "received [notice of the time, date, and place of the hearing] in a timely fashion."   913 F.3d at 1162.   *Karingithi* therefore *only* decided the question of whether the immigration court had jurisdiction over an alien who received the required information later, separately from the initial NTA.    It specifically reserved ruling on the question in this case, which is whether jurisdiction vests even when the alien is

---

[1] For clarity, I refer to the mandatory information (the address of the immigration court where the Service will file the NTA) as "the address," or "the address for filing" and the permissive information (the place of the hearing) as "the place" or "the place of hearing."

*never* provided with the time, date, and place of his removal hearing. *Id.*

When applied to the separate question of the address where the NTA will be filed, *Karingithi*'s analysis dictates that jurisdiction does not vest in the immigration court if the NTA excludes the address. If the regulations determine when jurisdiction vests, and the regulation's optional inclusion of the hearing information allows a later cure, then the regulation's mandatory information should be required for jurisdiction to vest.

Curiously, a Ninth Circuit case that addressed that issue came out the other way. In *Aguilar Fermin v. Barr*, we let stand the BIA's conclusion that omitting the address from the NTA did not deprive the immigration court of jurisdiction. We treated the address for NTA filing as synonymous with the place of the removal hearing. 958 F.3d at 895. Simultaneously, *Aguilar Fermin* relied on deference to the BIA's interpretation, deeming it not plainly erroneous. *Id. Aguilar Fermin* and *Karingithi* thus seem to be in tension, stemming from treating "place of the hearing" and "address of the immigration court where the NTA will be filed" as interchangeable terms despite their clearly different meanings and location in different subsections of the regulations. In my view, the relevant case is *Karingithi*, and it supports the district court's ruling.

**B**

Bastide-Hernandez's NTA did not include the date or time of the hearing. Moreover, he never received that information later. Under *Karingithi*, failure to cure the omission of the date and time of the hearing renders the NTA's sufficiency an open question but *Karingithi* provides the basis for addressing that issue.

Critically, *Karingithi*'s holding was based on the fact that the alien in that case later received a notice listing the time, date, and place of the hearing, which essentially rendered harmless the NTA's omission of that information, and thus vested the immigration court with jurisdiction to issue a removal order.  The court wrote, "[T]he hearing notices Karingithi received specified the time and date of her removal proceedings.  Thus, we do not decide whether jurisdiction would have vested if she had not received this information in a timely fashion."  913 F.3d at 1162.

Even *Aguilar Fermin* rests on the premise that the NTA's deficiency was later cured.  In that case, the court wrote, "The question then, is what is the remedy when the address is omitted from the NTA?" and answered, "providing the alien and the government with the complete notice at a later time."  *Aguilar Fermin*, 958 F.3d at 895.  Following the BIA's decision in *Matter of Rosales Vargas*, 27 I. & N. Dec. 745 (B.I.A. 2020), on the question of location, *Aguilar Fermin* stated, "*Rosales Vargas* and *Karingithi* are consistent.  Under both decisions, an omission of some of the information required by § 1003.14(a) and § 1003.15(b)(6) *can be cured and is not fatal*."  958 F.3d at 895 (emphasis added).  Thus, *Aguilar Fermin* purported to be consistent with *Karingithi*, and *Karingithi* treated the regulatory requirements for an NTA as jurisdictional, though able to be satisfied through a subsequent NOH.  Where the alien was never provided with information omitted from the NTA, nothing in *Aguilar Fermin* suggests that the immigration court obtains jurisdiction to issue a valid removal order.

## C

In my view, the majority opinion represents a clear rejection of our binding precedent.  Under the majority's

view, filing any document that purports to be a Notice to Appear with the Immigration Court is enough to vest jurisdiction with the IJ, even if that document does not comply with the regulatory requirements for an NTA, and those deficiencies are never cured. This interpretation ignores *Karingithi*'s holding that the regulations—and specifically the regulatory requirements for an NTA—control when jurisdiction vests.

Moreover, the majority ignores that the relevant regulation prohibits the method of service used to serve the Notice of Hearing (NOH) in this case. The regulation permits service of an NOH only by personal delivery or certified mail. 8 C.F.R. § 1003.32. Here, the Immigration Court faxed Bastide-Hernandez's NOH to his unspecified "Custodial Officer" at the detention facility where he was housed. There is no evidence in the record demonstrating that Bastide-Hernandez ever received the NOH. Our precedent dictates that the IJ lacked jurisdiction to enter a removal order under these circumstances.

## D

I would further hold that the district court was correct in determining that Bastide-Hernandez did not need to satisfy the collateral attack requirements in § 1326(d).

"8 U.S.C. § 1326 prohibits any alien from entering the United States after he has 'been denied admission, excluded, deported or removed[.]'" *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001) (quoting 8 U.S.C. § 1326(a)). A defendant who is being prosecuted for violating this criminal statute may collaterally attack his underlying deportation order. *See United States v. Gonzales-Villalobos*, 724 F.3d 1125, 1129 (9th Cir. 2013). To mount a successful collateral attack, a defendant must demonstrate:

(1) he "exhausted any administrative remedies that may have been available to seek relief against the order;" (2) his "deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

It is an open question in this circuit under recent case law whether a defendant must satisfy § 1326(d)'s requirements even if the immigration court lacked jurisdiction to enter the removal order. But we addressed a similar situation in *Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir. 1930). There, the alien objected to his deportation on the ground that he had not been convicted of a "crime of moral turpitude" punishable by one year of imprisonment because the statute under which he was charged allowed him to set aside his guilty verdict upon his successful completion of probation. *Wilson*, 41 F.2d at 705–06. The court noted that "[t]he prosecution against him is still pending in the state court; no sentence has been pronounced for the crime charged, and no sentence will follow in the future, provided he fulfills all the terms and condition of his probation." *Id.* at 706. Consequently, the basis for his "deportation c[ould] not be sustained." *Id.* Notably, the court held that "if the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." *Id.*; *see also Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 884 (9th Cir. 2003) (holding that where the BIA lacks authority to enter a removal order, the removal order is "a legal nullity").

District courts in this circuit have relied on *Wilson* to conclude that a defendant is not required to satisfy § 1326(d) requirements upon a showing that the immigration court lacked jurisdiction over the defendant's removal proceeding. *See United States v. Arteaga-Centeno*, 353 F. Supp. 3d 897,

901–03 (N.D. Cal. 2019), *vacated on other grounds by United States v. Arteaga-Centeno*, No. 18-cr-00332, 2019 WL 1995766 (N.D. Cal. May 6, 2019); *see also United States v. Rosas-Ramirez*, 424 F. Supp. 3d 758 (N.D. Cal. 2019); *United States v. Martinez-Aguilar*, 2019 WL 2562655, at *6 (C.D. Cal. June 13, 2019); *United States v. Quijada-Gomez*, 360 F. Supp. 3d 1084, 1094 (E.D. Wash. 2018). This reasoning is persuasive for two reasons.

First, upon a defendant's showing of a lack of jurisdiction in the immigration court, the government "cannot establish all of the requisite elements of illegal reentry under 8 U.S.C. § 1326[,]" specifically "the existence of a valid removal order." *Martinez-Aguilar*, 2019 WL 2562655, at *6. Bastide-Hernandez's defense to the crime charged therefore does not constitute a "collateral challenge" to his deportation order. Without jurisdiction vesting in the immigration court, "there is no removal order to be collaterally attacked." *Arteaga-Centeno*, 353 F. Supp. 3d at 903. In other words, a necessary element of the government's case is absent, and the indictment should therefore be dismissed.

Second, the reasoning in *Wilson* "comport[s] with general rules regarding challenges for jurisdiction[.]" *Quijada-Gomez*, 360 F. Supp. 3d at 1094–95. The requirements of § 1326(d) "presume the existence of some proceeding through which the defendant could have raised the basis for the challenge." *Id.* at 1094. If the immigration court lacks jurisdiction, however, then the defendant cannot be expected to recognize the validity of the proceeding—let alone challenge the court's jurisdiction during that proceeding. *See id.* at 1094–95. Just as § 1326(d)'s limitations "would not bar a defendant from pointing out that what the prosecutor alleges is a prior deportation order is in

fact a blank piece of paper, it does not bar a challenge to an immigration court's jurisdiction that would give the deportation order the same legal effect." *Id.*

## CONCLUSION

Faithful application of *Karingithi* requires us to affirm the district court's dismissal of the indictment. The government failed to comply with multiple regulatory requirements—both the information that must be provided to the alien and the manner of service of process. In the simplest terms, *Karingithi* requires regulatory compliance in order for the IJ to have jurisdiction to issue a removal order. By discarding *Karingithi*, the majority allows the government to bypass the plain language of the relevant regulations and the precedent upon which courts and parties have relied. I respectfully dissent.