**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 25 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARILU MEJIA ROMERO,

Petitioner,

v.

ROBERT M. WILKINSON, Acting
Attorney General,

Respondent.

No.   19-70607

Agency No. A205-243-160

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 9, 2021[**]
San Francisco, California

Before:  HURWITZ and BRESS, Circuit Judges, and CORKER,[***] District Judge.

Marilu Mejia-Romero ("Romero"), a citizen of Mexico, lived in the United

States for twelve years before the Department of Homeland Security ("DHS")

initiated removal proceedings against her.  DHS served Romero with a Notice to

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

[***]     The Honorable Clifton L. Corker, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Appear ("NTA"), asserting that she was subject to removal. This NTA did not state the specific date and time of the hearing, only that it would be "on a date to be set at a time to be set." Romero received a second notice the next day that included the date and time. Romero conceded removability but filed an application for withholding of removal and protection under the Convention Against Torture ("CAT"). She claimed she feared persecution because of her relation to her stepfather, who had been kidnapped in Mexico and extorted for money.

The Immigration Judge ("IJ") denied Romero's application, finding no nexus between Romero's fear of harm and her relationship with her stepfather. Romero moved for termination of her removal proceedings, relying on the decision in *Pereira v. Sessions* to claim that the defective NTA deprived the IJ of jurisdiction. 138 S. Ct. 2105, 2110 (2018). The Board of Immigration Appeals ("BIA") dismissed Romero's appeal from the IJ's decision and denied her motion to terminate. Romero now petitions for review of the BIA's decisions. We have jurisdiction under 8 U.S.C. § 1252 and deny the petition for review.

1.     Although the initial NTA did not include the hearing date and time, a defective NTA can be cured by subsequent notice containing the required information. *Aguilar Fermin v. Barr*, 958 F.3d 887, 889 (9th Cir. 2020). Here, the defective NTA was cured the next day when Romero received a second notice that included a hearing date and time.

2.     Substantial evidence supports the BIA's denial of Romero's application for withholding of removal.  The BIA affirmed the IJ's denial of withholding of removal because it found that Romero had failed to establish a nexus between her proposed social group and any feared future persecution.  Romero's stepfather had been kidnapped once in 2016, but the kidnappers never contacted him again nor did they ever threaten or mention Romero.  Later, a different group telephoned her stepfather, extorting him and falsely claiming to have kidnapped Romero and other family members, but they never actually kidnapped or acted on any threats against him or Romero's family.  The required nexus is lacking.  *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) ("An alien's desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground.").

3.     Substantial evidence also supports the BIA's denial of CAT relief.  To qualify for CAT relief, Romero must have shown that it was more likely than not that she would be tortured if returned to Mexico.  *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010).  This torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official [or other person] acting in an official capacity."  8 C.F.R. § 208.18(a)(1).  Though Romero claims that police kidnapped her stepfather, she provided no evidence that they had ever contacted or threatened anyone in her family, including her, after that incident.  Nor was there evidence that the police were unwilling or unable to help her family, because the

3

family never asked for assistance. The same is true of her claim that she would be tortured in Mexico upon her return because she would be perceived as a wealthy returnee from the United States. Romero has not established that she is more likely than not to be tortured with the participation or acquiescence of the Mexican government.

**PETITION FOR REVIEW DENIED.**