NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JESUS ALVAREZ-TORRES, <br><br>         Petitioner, <br><br>   v. <br><br> ROBERT M. WILKINSON, Acting Attorney General, <br><br>         Respondent. | No. 19-72277 <br><br> Agency No. A205-764-388 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 8, 2021
San Francisco, California

Before: WARDLAW and BEA, Circuit Judges, and ROSENTHAL,** District Judge.

Jesus Alvarez-Torres, a native and citizen of Mexico, petitions for review of a Board of Immigration Appeals (BIA) decision affirming an order by an immigration judge (IJ) denying his application for withholding of removal. Alvarez-

---

    * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    ** The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

1

Torres had applied for withholding of removal based on past persecution and fear of future persecution stemming from his service as a police officer in Mexico. He contends that the IJ erred in denying his application and by taking administrative notice of "country conditions" without affording him prior notice and an opportunity to respond. Alvarez-Torres also contends that the IJ's jurisdiction never vested because his Notice to Appear (NTA) lacked the time, date, and location of his removal proceedings. We have jurisdiction under 8 U.S.C. § 1252.

When "the BIA agrees with and incorporates specific findings of the IJ while adding its own reasoning," as it did here, we review the decisions from both the BIA and IJ (collectively, the "Agency"). *Bhattarai v. Lynch*, 835 F.3d 1037, 1042 (9th Cir. 2016). We review the Agency's legal conclusions *de novo* and its denial of withholding of removal for "substantial evidence." *Parada v. Sessions*, 902 F.3d 901, 908 (9th Cir. 2018). "Substantial evidence review means that we may only reverse the agency's determination where the evidence compels a contrary conclusion from that adopted by the BIA." *Id.* at 908–09 (internal citation omitted).

1. Alvarez-Torres bears the burden of proving eligibility for withholding of removal by demonstrating that he "is unable or unwilling to return to [Mexico] because of [past] persecution or a well-founded fear of [future] persecution." *Doe v. Holder*, 736 F.3d 871, 877 (9th Cir. 2013) (internal citation omitted). He "must establish that any persecution was or will be *on account of his* membership" in a

protected social group. *Ayala v. Holder*, 640 F.3d 1095, 1097 (9th Cir. 2011) (emphasis in original). "The words 'on account of' and 'because of' address the persecutor's motive for persecuting the victim." *Barajas-Romero v. Lynch*, 846 F.3d 351, 357 (9th Cir. 2017).

The administrative record does not compel a finding that Alvarez-Torres suffered past persecution "on account of" his service as a police officer.[1] First, in 1989, Alvarez-Torres was injured in the line of duty while responding to a shootout with members of the Familia Michoacana cartel. However, a police officer's "role in disrupting particular criminal activity" does not constitute persecution. *See Ayala*, 640 F.3d at 1098 (denying petition because "[petitioner] was only shot at and threatened because, while an officer, he had arrested a particular drug dealer"); *see also Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) (denying petition because "harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground").

Next, in 1995, the Familia Michoacana contacted Alvarez-Torres and offered him money in exchange for information. Three days after he rejected the offer, he was stabbed. Although the Familia Michoacana initially contacted Alvarez-Torres because he was a police officer with access to information that they valued, they did

---

[1] We do not reach the issue whether Alvarez-Torres's claimed social group—police officers—is cognizable.

3

not stab him *because* he was a police officer. Alvarez-Torres's own testimony—that the stabbing "was the result of [him] not having accepted the offer that they had made to [him]"—links this tragic incident to his refusal to cooperate with the cartel. Simply put, Alvarez-Torres fears retaliation, not persecution. *See Pagayon v. Holder*, 675 F.3d 1182, 1191 (9th Cir. 2011) (denying petition where petitioner feared retaliation by the National Police for revealing the circumstances of his father's murder); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992) (finding that petitioner's fear of harm did not constitute fear of persecution "on account of" political opinion but, rather, fear of retaliation "on account of" his refusal to join the guerilla organization).

The administrative record also does not compel a finding that Alvarez-Torres faces a clear probability of future persecution in Mexico "on account of" his service as a police officer. After the 1995 stabbing, Alvarez-Torres served as a police officer for about six years and a security guard for about another year—all without incident. Although his ability to live safely in Mexico is not dispositive, it certainly undermines his contention that he will more likely than not be persecuted if he were to return. *See Kaiser v. Ashcroft*, 390 F.3d 653, 660 (9th Cir. 2004) (holding that petitioners failed to establish clear probability of persecution where they lived in Pakistan without harm for ten years after being placed on "hit list"); *Lim v. INS*, 224 F.3d 929, 938 (9th Cir. 2000) (holding that petitioner failed to establish clear

4

probability of persecution where he "retired from the police force and lived in the Philippines for six years without harm"). Indeed, Alvarez-Torres's own rationale for leaving Mexico—that "things in Michoacan were getting worse and worse and [he] didn't want to live there anymore"—demonstrates that his fear "is based on general conditions of criminal violence and civil unrest," not an individualized risk of persecution because he was a police officer. And to the extent that past experiences are indicative of any future harm that Alvarez-Torres might experience, that harm would stem from retaliation for his prior refusal to cooperate with the Familia Michoacana. Because Alvarez-Torres fails to establish past persecution or a clear probability of future persecution, substantial evidence supports the Agency's decision to deny Alvarez-Torres's application.

2. "[D]ue process requires *both* notice to the applicant that administrative notice will be taken *and* an opportunity to rebut the extra-record facts or to show cause why administrative notice should not be taken of those facts." *Circu v. Gonzales*, 450 F.3d 990, 991–92 (9th Cir. 2006) (emphasis in original) (internal citation omitted). To prevail, the petitioner "must show error and substantial prejudice," which amounts to error that "affected the outcome of the proceedings." *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000). "[T]he results of a proceeding should not be overturned if the outcome would have been the same even without the violation." *Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018).

5

Alvarez-Torres argues that the IJ violated due process when she unexpectedly took administrative notice that the "Familia Michoacana has been usurped by the Knights Templar" and thus "no longer exists." But even if the IJ erred, Alvarez-Torres fails to establish that he was prejudiced by the putative error. As demonstrated above, notwithstanding the noticed fact, substantial evidence supports the Agency's decision to deny Alvarez-Torres's application for withholding of removal. The noticed fact was only one of many facts on which the IJ relied, merely constituting an *additional* reason to support the decision. Because the putative error did not affect the outcome of the proceedings, Alvarez-Torres's challenge fails.[2]

**3.** Alvarez-Torres requests that we terminate his removal proceedings because jurisdiction never vested with the IJ. He argues that the NTA with which he was served lacked several elements required under 8 C.F.R. §§ 1003.14(a) and 1003.15(b)(6): the time, date, and location of his removal proceedings. Relying on the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), Alvarez-Torres contends that the subsequently received Notice of Hearing, which contained this information, failed to cure the defective NTA.

However, we already considered—and rejected—this argument in *Aguilar*

---

[2] This conclusion is consistent with the BIA's holding that it "need not address whether the [IJ] correctly took administrative notice of country conditions in Mexico, inasmuch as those conditions are not germane to the outcome of these proceedings."

*Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020). As here, Aguilar's NTA lacked the time, date, and location of her removal proceedings. Also as here, Aguilar relied on *Pereira* and argued that the defective NTA rendered the IJ without jurisdiction.[3] We declined to extend *Pereira*, however, and held that "the lack of time, date, and place in the NTA sent to Aguilar did not deprive the immigration court of jurisdiction." *Id.* at 893–95. Indeed, "an omission of some of the information required by § 1003.14(a) and § 1003.15(b)(6) can be cured and is not fatal." *Id.* at 895. To cure and vest jurisdiction, we noted that DHS need only "provid[e] the alien and the government with the complete notice at a later time." *Id.*

*Aguilar Fermin* forecloses the relief that Alvarez-Torres seeks. Although his NTA lacked the time, date, and location of his removal proceedings, Alvarez-Torres received a Notice of Hearing four days later. That Notice of Hearing contained the missing information, thereby curing the defective NTA and vesting jurisdiction with the IJ. Accordingly, Alvarez-Torres's argument fails.

The petition for review is **DENIED**.

---

[3] Nonpermanent residents who are subject to removal proceedings and who have accrued ten years of continuous physical presence in the United States may be eligible for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1). Under the "stop-time rule," however, the period of "continuous physical presence" is "deemed to end . . . when the alien is served a [NTA] under section 1229(a)." *Id.* § 1229b(d)(1)(A). In *Pereira*, the Supreme Court held that a NTA "that does not inform a noncitizen when and where to appear for removal proceedings is not a '[NTA] under section 1229(a)' and therefore does not trigger the stop-time rule." 138 S. Ct. at 2110. The stop-time rule is not at issue in this case.