In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 20-1048

REBECA PEREZ-PEREZ,

*Petitioner,*

*v.*

MONTY WILKINSON,
Acting Attorney General of the United States,

*Respondent.*

_____

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A024-750-424

_____

ARGUED NOVEMBER 5, 2020 — DECIDED FEBRUARY 11, 2021

_____

Before SYKES, *Chief Judge*, and HAMILTON and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Rebeca Perez-Perez entered the United States illegally in 1990. After she failed to appear at a deportation hearing scheduled in 1992, an immigration judge ordered Perez-Perez to be deported. Twenty-six years later, and still living in the United States, she moved to reopen her 1992 deportation proceedings under the mistaken belief that

the Supreme Court's 2018 decision in *Pereira v. Sessions* offered her a path to relief from deportation. An immigration judge denied her motion and the Board of Immigration Appeals affirmed, finding reopening unwarranted and Perez-Perez's reliance on *Pereira* misplaced. We see no abuse of discretion in the Board's refusal to reopen the 1992 deportation proceedings and deny the petition for review.

## I

## A

In May 1990, 18-year-old Rebeca Perez-Perez entered the United States from Mexico without inspection. She was apprehended within a few weeks after police stopped a van transporting nine undocumented immigrants through Illinois to New York. Federal immigration authorities personally served Perez-Perez with an Order to Show Cause charging her with unlawful entry and ordering her to appear for a deportation hearing at a time and place "to be set." They then released her on her own recognizance.

Two years later, the Immigration and Naturalization Service initiated deportation proceedings and scheduled a hearing for July 2, 1992 before an immigration judge in Chicago. The immigration court sent a notice of the hearing to Perez-Perez on May 29 at the New York address she provided upon being released in 1990. The court rescheduled the hearing for July 30 at 10:00 a.m. and sent a second notice to Perez-Perez at the same address, informing her of the new date and warning that she could be ordered deported for failure to appear at the hearing. The court sent this second notice by certified mail and a receipt bearing the signature of "Rebeca Perez," postmarked on July 6, arrived at the Chicago immigration

court on July 22. Perez-Perez insists, however, that she never received either notice and was unaware of the deportation hearing.

Perez-Perez did not attend the July 30 hearing. The immigration judge found her deportable by clear and convincing evidence, noting in her absence that she failed to show any entitlement to relief from deportation and ordering her deported to Mexico. The immigration court sent Perez-Perez a copy of the decision and advised that the deportation order was final unless she appealed by August 17, 1992. No appeal followed.

Twenty-six years passed before Perez-Perez—on October 26, 2018—filed a motion with the Chicago immigration court to reopen her deportation proceedings to pursue a form of discretionary relief known as cancellation of removal. During these many intervening years, several important changes took place in immigration law. These changes matter for Perez-Perez.

For one, in 1996 Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act. See Pub. L. No. 104–208, 110 Stat. 3009–546 (1996). The Act, often shorthanded as IIRIRA, increased the requirements for the charging document used to initiate "removal" proceedings—the new term for "deportation"—mandating that the government serve a non-citizen with a written Notice to Appear specifying the time and place of a hearing, among other information. See 8 U.S.C. § 1229(a)(1). IIRIRA also created a new form of discretionary relief called "cancellation of removal" available to certain non-citizens in active removal proceedings who demonstrate ten years of continuous physical presence in the United States, good moral character, no disqualifying

criminal convictions, and extreme hardship if removed. See *id.* § 1229b(b)(1). Under a so-called "stop-time rule," Congress also provided that a period of continuous physical presence ends when a non-citizen receives a Notice to Appear. See *id.* § 1229b(d)(1).

The next development came in June 2018, when the Supreme Court held in *Pereira v. Sessions* that a Notice to Appear omitting the time and place of a removal hearing is deficient and does not trigger the stop-time rule. See 138 S. Ct. 2105, 2114–15 (2018). Put more simply, a non-citizen who received a defective Notice to Appear lacking this date and place information continues to accrue time toward the ten-year continuous presence requirement for cancellation of removal.

Perez-Perez thought *Pereira* might provide her relief from the order of deportation entered 26 years earlier. She saw *Pereira* as rendering her 1990 Order to Show Cause defective for lacking the date and time of her deportation hearing and that this shortcoming deprived the immigration court of jurisdiction and invalidated her 1992 deportation order. On this reasoning, Perez-Perez asked the immigration court in October 2018 to reopen her deportation proceedings and allow her to apply for cancellation of removal.

B

The immigration judge denied Perez-Perez's motion to reopen in February 2019. Because she had been served an Order to Show Cause, the judge reasoned, the Supreme Court's holding in *Pereira* regarding the requisite inclusion of date and time information in a Notice to Appear—a different type of document with different requirements under a modified

statutory scheme—did not apply to Perez-Perez. There was, therefore, no ground upon which to reopen her 1992 deportation proceedings.

The Board of Immigration Appeals dismissed Perez-Perez's appeal in December 2019. At the outset, the Board determined that the record—and in particular the proof of service by certified mail in July 1992—established that Perez-Perez had received notice of her deportation hearing. The Board then agreed with the immigration judge that *Pereira* had no application to Perez-Perez because she received an Order to Show Cause, while *Pereira* concerned the post-1996 IIRIRA requirements of a Notice to Appear. In any event, the Board acknowledged, Perez-Perez was ineligible for the underlying relief she sought—cancellation of removal—because she was not in removal proceedings but instead had faced deportation proceedings in 1992, before Congress enacted IIRIRA four years later. The Board also refused to reopen the prior deportation proceedings *sua sponte*, finding no circumstances that would justify that extraordinary discretionary remedy.

Perez-Perez petitioned our court for review.

## II

### A

Perez-Perez challenges the denial of her motion to reopen and asks that we remand for the Board to consider her application for cancellation of removal on the merits. We have jurisdiction to consider the Board's denial of a motion to reopen notwithstanding that the decision to grant or deny such a request lies soundly within the discretion of both the immigration judge and Board. See *Kucana v. Holder*, 558 U.S. 233, 253 (2010); 8 C.F.R. § 1003.2(a) (explaining the Board's

discretionary authority to reopen immigration proceedings); 8 C.F.R. § 1003.23(b)(3) (addressing an immigration judge's discretion to reopen proceedings). Because the Board adopted the immigration judge's decision but provided additional reasoning, we review the judge's decision as supplemented by the Board. See *Cece v. Holder*, 733 F.3d 662, 675 (7th Cir. 2013) (en banc).

Our standard of review is deferential in light of the Board's wide latitude. See *Kucana*, 558 U.S. at 242. Indeed, we review the Board's denial of reopening for abuse of discretion. See *Gamero v. Barr*, 929 F.3d 464, 468 (7th Cir. 2019), cert. denied, 141 S. Ct. 85 (2020). And we will not disturb the Board's decision unless it "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* at 468 (citation omitted).

A motion to reopen deportation proceedings asks an immigration judge or the Board to alter a prior decision in light of newly discovered evidence or changed circumstances since the deportation hearing. See *Dada v. Mukasey*, 554 U.S. 1, 12 (2008). The Board can deny a motion to reopen for several reasons, including if the motion "is not supported by previously unavailable and material evidence," if "it fails to establish the applicant's prima facie eligibility for the underlying relief sought," or if "the Board determines discretionary relief is not appropriate in the petitioner's case." See *Boika v. Holder*, 727 F.3d 735, 738 (7th Cir. 2013). Even if the non-citizen has made out a *prima facie* case for relief, the Board has discretion to deny reopening. See 8 C.F.R. § 1003.2(a); *Kucana*, 558 U.S. at 242–44.

B

The Board did not abuse its discretion or commit any legal error in denying Perez-Perez's motion to reopen. To begin, Perez-Perez has not identified any defect in her 1992 proceedings. To initiate deportation proceedings under the governing law in 1990, when Perez-Perez was apprehended, immigration authorities had to provide a non-citizen with an Order to Show Cause specifying the nature of the proceeding and the charges against the non-citizen, among other information. See 8 U.S.C. § 1252b(a)(1) (repealed 1996). Authorities also had to provide written notice of the time and place at which the proceedings would be held, "in the order to show cause or otherwise." See *id.* § 1252b(a)(2)(A) (repealed 1996); see also *Ortiz-Santiago v. Barr*, 924 F.3d 956, 962 (7th Cir. 2019) (recognizing that an Order to Show Cause did not itself need to specify the time and place of the deportation hearing).

The record shows that Perez-Perez received an Order to Show Cause by personal service in June 1990, with the Order specifying only that she was to appear for a hearing at a date and time "to be set." But the immigration court then followed up by sending notice by certified mail on July 2, 1992, advising Perez-Perez that her deportation hearing would occur on July 30, 1992 at 10:00 a.m. in Chicago. The Board determined that Perez-Perez received and acknowledged this notice as part of the certified mail service. While Perez-Perez maintains that she never received notice, she has made no showing that calls the Board's contrary finding into question. On this record, we will not disturb the Board's determination. See *Garcia-Arce v. Barr*, 946 F.3d 371, 376 (7th Cir. 2019) (recognizing that the Board's "findings of fact are conclusive unless any

reasonable adjudicator would be compelled to conclude to the contrary" (quoting 8 U.S.C. § 1252(b)(4)(B))).

Nor is there anything about the Supreme Court's decision in *Pereira* that affects the soundness of Perez-Perez's 1992 deportation proceedings. *Pereira* concerned a non-citizen's eligibility for cancellation of removal and the statutory requirements of a Notice to Appear—the charging document used to trigger removal proceedings after IIRIRA became effective on April 1, 1997. See 138 S. Ct. at 2109–10. Because the statute expressly mandates that a Notice to Appear include the time and place at which removal proceedings will be held, a notice which fails to include such information, the Court concluded, is not a proper "Notice to Appear" and therefore does not trigger the stop-time rule. See *id.* at 2114.

But remember that Perez-Perez's Order to Show Cause was governed by different statutory requirements—the ones in place before IIRIRA. The Order complied with the pre-IIRIRA prescriptions. See *Ortiz-Santiago*, 924 F.3d at 962 (recognizing that an "Order to Show Cause had to include largely the same information as the later Notice to Appear, except that it did not need to specify the time and place of the hearing"). As *Pereira* only addressed the statutory requirements of a Notice to Appear, the holding has no application to Perez-Perez's Order to Show Cause.

All of this leads us to conclude that the Board did not abuse its discretion in declining to reopen Perez-Perez's 1992 deportation proceedings 26 years later, and we can deny her petition on this basis alone.

If we went further, the outcome would not change for Perez-Perez. The Board permissibly found reopening was not

warranted on the additional ground that Perez-Perez is not eligible for the underlying relief she seeks. Perez-Perez moved to reopen so she could apply for cancellation of removal under 8 U.S.C. § 1229b(b)(1). But we held in *Ming-Hui Wu v. Holder* that the discretionary relief "provisions created by the IIRIRA, including cancellation of removal, are inapplicable to aliens who were in exclusion or deportation proceedings prior to the IIRIRA's effective date on April 1, 1997." 567 F.3d 888, 893 (7th Cir. 2009). As Perez-Perez entered deportation proceedings and received a final deportation order in 1992—years before IIRIRA's effective date—the Board stood on solid ground in finding that she had failed to show eligibility for cancellation of removal.

C

We close by addressing Perez-Perez's contention that the Board violated her substantive due process rights when it determined she was ineligible for cancellation of removal and denied her motion to reopen. We disagree. In "immigration proceedings, a petitioner has no liberty or property interest in obtaining purely discretionary relief," so "the denial of such relief therefore cannot implicate due process." *Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004); see also *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011) (recognizing that "hope for a favorable exercise of administrative discretion" falls short of legal entitlement to relief). Both reopening and cancellation of removal are forms of discretionary relief which the Board can deny even if Perez-Perez presents a *prima facie* case for relief. See *Cruz-Moyaho v. Holder*, 703 F.3d 991, 1000 (7th Cir. 2012); *Dave*, 363 F.3d at 653. The Board's denial here, then, does not offend principles of due process.

In the end, the decision to reopen deportation proceedings rests firmly in the Board's discretion. We cannot say the Board abused its discretion in denying Perez-Perez's motion here, so her petition for review is DENIED.