**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellant*, <br><br> v. <br><br> JUAN CARLOS BASTIDE-HERNANDEZ, AKA Jesus Chavez-Gongoria, AKA Domingo Chavez-Lopez, AKA Francisco Soto Hernandez, *Defendant-Appellee.* | No. 19-30006 <br><br> D.C. No. 1:18-cr-02050-SAB-1 <br><br><br> ORDER AND OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Stanley Allen Bastian, Chief District Judge, Presiding

Argued and Submitted December 7, 2020
San Francisco, California

Filed July 12, 2021

Before: Danny J. Boggs,[*] Milan D. Smith, Jr., and
Mark J. Bennett, Circuit Judges.

Order;
Opinion by Judge Boggs;
Concurrence by Judge Milan D. Smith, Jr.

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel filed (1) an order withdrawing its prior opinion and dissent and denying as moot a petition for rehearing en banc; and (2) a new opinion and concurrence reversing the district court's dismissal of an indictment charging illegal reentry after removal, in violation of 8 U.S.C. § 1326, and remanding.

The indictment was based on an order of removal entered by an immigration court. The district court held that a defective notice to appear, lacking time and date information, did not provide the immigration court with jurisdiction to enter the removal order.

Observing that *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), and *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020), created some confusion as to when jurisdiction actually vests, the panel held that 8 C.F.R. § 1003.14(a) means what it says and controls: the jurisdiction of the immigration court vests upon the filing of a notice to appear, even one that does not at that time inform the alien of the time, date, and location of the hearing.

The panel wrote that while a defective notice to appear does not affect jurisdiction, it can create due-process violations. To mount a collateral attack on the validity of an underlying removal order under 8 U.S.C. § 1326(d), the defendant must demonstrate that (1) he exhausted any

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

available administrative remedies; (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. Under *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021), each of these three statutory requirements is mandatory, and the first two requirements are not excused for a noncitizen who was removed for an offense that did not render him removable. The panel left to the district court the question whether the defendant may be able to collaterally attack the underlying removal order on grounds other than the immigration judge's lack of jurisdiction, should he again attack the removal order on remand.

Concurring in the judgment, Judge M. Smith wrote that in light of *Palomar-Santiago*, he agreed with his colleagues that the defendant must satisfy the requirements of 8 US.C. § 1326(d) to obtain the relief he requests. His agreement, however, ended there. Judge M. Smith wrote that, in his view, *Karingithi* and *Aguilar Fermin* compelled the conclusion that the immigration court lacked jurisdiction to issue a removal order because the court never cured the omission of the date and time of the hearing from the defendant's notice to appear. Accordingly, he would reverse the district court based only on the defendant's failure to satisfy the requirements of § 1326(d).

---

**COUNSEL**

Richard C. Burson (argued), Assistant United States Attorney; Joseph H. Harrington, Acting United States Attorney; United States Attorney's Office, Yakima, Washington; for Plaintiff-Appellant.

Paul E. Shelton (argued), Federal Defenders of Eastern Washington, Yakima, Washington, for Defendant-Appellee.

## ORDER

The opinion and dissent filed on February 2, 2021, and published at 986 F.3d 1245 (9th Cir. 2021) are withdrawn. A new opinion and concurrence in the judgment are filed concurrently with this order. Accordingly, Defendant-Appellee's petition for rehearing en banc filed on March 2, 2021, is **DENIED** as moot. [Dkt No. 55]. Subsequent petitions for rehearing and petitions for rehearing en banc may be filed.

## OPINION

BOGGS, Circuit Judge:

The United States challenges the district court's dismissal of an indictment charging Juan Carlos Bastide-Hernandez with illegal reentry after removal, in violation of 8 U.S.C. § 1326. We reverse.

I

Bastide-Hernandez, a citizen and native of Mexico, first entered the United States without inspection in 1995 when he was 17 years old. Bastide-Hernandez, who is married to a United States citizen and has a United States citizen teenage son, has had extensive interaction with the immigration system. In April 2006, Bastide-Hernandez was placed in removal proceedings by U.S. Immigration and Customs Enforcement ("ICE"). On April 26, ICE served

him two Notices to Appear ("NTA"), the first sent to his residence and the second to his updated address at the immigration detention facility in Tacoma, Washington. Neither NTA specified the date and time of the hearing, instead stating that the hearing would occur "on a date to be set [and] a time to be set." On May 12, the immigration court sent Bastide-Hernandez a curative Notice of Hearing ("NOH") by fax to an unidentified custodial officer at the detention center, which set the hearing date for June 14, 2006. Bastide-Hernandez denies ever receiving the NOH and there is no paperwork indicating when or if the unnamed custodial officer in fact served the NOH on Bastide-Hernandez.

The removal hearing was held on June 14. What actually occurred during the hearing is unknown, as the government failed to produce the requested hearing transcript, so we have no specific evidence that Bastide-Hernandez was in attendance. We do know that the immigration court entered an order of removal (with no indication that it was issued in absentia), which was the basis for Bastide-Hernandez's 2018 § 1326 indictment for illegal re-entry. The district court dismissed the indictment, holding that a defective NTA lacking time and date information did not provide the immigration court with jurisdiction to enter an order of removal. The district court also held that Bastide-Hernandez need not satisfy the § 1326(d) requirements because the immigration court lacked jurisdiction.

II

The district court's decision incorrectly relied on the reasoning of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and was issued prior to this court's decisions in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), and *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020). Under

*Karingithi* and *Aguilar Fermin,* a defective NTA does not divest the immigration court of jurisdiction. *Karingithi* held that regulations promulgated by the Attorney General[1] define when the jurisdiction of immigration courts vests, rather than the statute[2] authorizing those regulations. Failure to include the date and time of a removal hearing in an NTA does not deprive the immigration court of subject-matter jurisdiction so long as the information is provided in a subsequent NOH. *Karingithi*, 913 F.3d at 1161–62. Similarly, *Aguilar Fermin* held that failure to include the address of the immigration court in an NTA does not deprive the immigration court of jurisdiction, so long as a subsequent NOH provides that information. *Aguilar Fermin*, 958 F.3d at 893–95. The regulations provide that "[j]urisdiction vests . . . when a charging document is filed with the Immigration Court," 8 C.F.R. § 1003.14(a), and requires the NTA include "the time, place and date of the initial removal hearing, where practicable." 8 C.F.R. § 1003.18(b).

*Karingithi* and *Aguilar Fermin* have created some confusion as to when jurisdiction actually vests, as neither squarely held that jurisdiction vests immediately upon the filing of an NTA, despite the language of the regulations. To clarify, we now hold that the regulation means what it says, and controls. The only logical way to interpret and apply *Karingithi* and *Aguilar Fermin* is that the jurisdiction of the immigration court vests upon the filing of an NTA, even one that does not at that time inform the alien of the time, date, and location of the hearing. If this were not the case, upon the filing of an NTA jurisdiction would vest, but then would

---

[1] 8 C.F.R. § 1003.14(a), 8 C.F.R. § 1003.15(b), and 8 C.F.R. § 1003.18(b).

[2] 8 U.S.C. § 1229

unvest if the NTA lacked required time, date, and location information, only to once again revest if a subsequent curative NOH provided that missing information. Jurisdiction is not so malleable. Jurisdiction, for all its subtle complexities, is not ephemeral. It either exists or it does not. Under *Karingithi* and *Aguilar Fermin,* we now hold that when an NTA is filed, jurisdiction exists and vests with the immigration court.

## III

While a defective NTA does not affect jurisdiction, it can create due-process violations. A person is guilty of the offense of illegal reentry if he "has been denied admission, excluded, deported, or removed [from] the United States . . . and thereafter enters, attempts to enter, or is at any time found in, the United States." 8 U.S.C. § 1326(a). Section 1326 specifically contemplates that defects in an original removal proceeding may vitiate a later criminal proceeding under § 1326(a). A defendant who is prosecuted for violating this criminal statute "has a due process right to collaterally attack the underlying deportation order, because it serves as a predicate element of the crime for which he is charged." *United States v. Gonzales-Villalobos*, 724 F.3d 1125, 1129 (9th Cir. 2013).

To mount a collateral attack on the validity of an underlying removal order, the defendant must demonstrate that "(1) the [noncitizen] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); *see also United States v. Ochoa-Oregel*, 904 F.3d 682, 684 (9th Cir. 2018). "[E]ach of the[se] statutory requirements . . . is mandatory."

*United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021).

In *Palomar-Santiago*, the Supreme Court reversed precedent of this court that "'excused [defendants] from proving the first two requirements' of § 1326(d) if they were 'not convicted of an offense that made [them] removable.'" *Id.* at 1620 (quoting *United States v Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017) (second alteration in original). In so doing, the Court explained that "[w]hen Congress uses 'mandatory language' in an administrative exhaustion provision, 'a court may not excuse a failure to exhaust.'" *Id.* at 1621 (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016)). Accordingly, "§ 1326(d)'s first two procedural requirements are not satisfied just because a noncitizen was removed for an offense that did not in fact render him removable." *Id.* This is because further administrative review, and judicial review, if necessary, could theoretically correct an immigration judge's ("IJ") erroneous merits decision. *See id.*

Bastide-Hernandez first argued that the § 1326(d) factors were inapplicable because the IJ lacked jurisdiction. In his supplemental briefing, Bastide-Hernandez contends that *Palomar-Santiago* is irrelevant because it dealt only with a case in which the defendant was convicted of an offense that did not render him removable, not a case in which the IJ lacked jurisdiction.

This argument fails for two reasons. First, as we have discussed above, the IJ did not lack jurisdiction. Second, jurisdiction notwithstanding, Bastide-Hernandez would still need to satisfy each of the three § 1326(d) requirements in order to obtain relief. Bastide-Hernandez's arguments to the contrary are foreclosed by *Palomar-Santiago*. Claims based on arguments outside the statute cannot circumvent the

mandatory nature of § 1326(d).  *Palomar-Santiago*, 141 S. Ct. at 1621–22.

The government argues that Bastide-Hernandez failed to meet any of the requirements of § 1326(d).  This included his failure to exhaust his administrative remedies during the 2006 immigration proceeding and during a later 2014 immigration proceeding by failing to appeal or waiving his right to appeal to the Board of Immigration Appeals ("BIA"), and because he failed to show that his immigration proceedings were fundamentally unfair based on the NTA's lack of date and time information.  Bastide-Hernandez chose not to substantively address any of the § 1326(d) requirements in his brief, standing only on his jurisdiction argument that the district court had accepted.  Because we have an underdeveloped record on appeal, we choose not to reach the question of whether Bastide-Hernandez may be able to collaterally attack the underlying removal order on other grounds by showing he can meet each of the three separate requirements of § 1326(d).  We leave this to the district court, should Bastide-Hernandez again collaterally attack the underlying removal order on remand.

We note, however, that although exhaustion and deprivation of judicial review are two separate requirements, our case law previously recognized "three overlapping categories" that satisfied both requirements: 1) the failure of an IJ to inform a noncitizen of his right to appeal his removal order to the BIA; 2) the failure of an IJ to inform a noncitizen that he is eligible for a particular kind of discretionary relief; and 3) where an alleged waiver of the right to appeal to the BIA was not "considered and intelligent" under the Due Process Clause of the Fifth Amendment.  *Gonzales-Villalobos*, 724 F.3d at 1130–31.  But, as we recently noted in *Zamorano v. Garland*, —F.4th —, 2021 WL 2621178 (9th

Cir. June 25, 2021), *Palomar-Santiago* "casts doubt on the continued vitality of our exhaustion excusal rule under § 1326(d)." *Id.* at *8.[3]

IV

On remand, Bastide-Hernandez may be able to collaterally attack the underlying removal order, but only if he can meet the requirements of 8 U.S.C. § 1326(d), including exhaustion of "any administrative remedies that may have been available to seek relief against the [removal] order." *Id.* § 1326(d)(1).

Relevant statutory and regulatory provisions provide that notice to the noncitizen shall be "given in person" or by mail to either the noncitizen or his counsel of record. *See* 8 U.S.C. § 1229(a)(1); 8 C.F.R. § 1003.14(a); and 8 C.F.R. § 1003.32(a). The Executive Office of Immigration Review ("EOIR") operating manual promulgated by the Office of the Chief Immigration Judge directs "that a NOH must be served in person 'when practicable' and otherwise may be served by mail; service by fax is not permitted."[4] Though neither the statute, regulations, nor manual are clear as to the effect of a custodial officer giving a fax in person to the detainee, we note that to succeed under 8 U.S.C. § 1326(d), an alien must demonstrate, in addition to the other two statutory

---

[3] Like the court in *Zamorano*, we leave for another day the effect of *Palomar-Santiago* on the "three overlapping categories."

[4] Office of the Chief Immigration Judge, Executive Office for Immigration Review, "Uniform Docketing System Manual," (Dec. 2013), *available at:* https://www.justice.gov/sites/default/files/eoir/legacy/2014/04/07/DocketManual_12_2013.pdf.

requirements, that "the entry of the order was fundamentally unfair."

Also, we lack any record from the immigration-court proceeding, so we do not know if the IJ informed Bastide-Hernandez of his right to appeal to the BIA or if Bastide-Hernandez might have been eligible for discretionary relief and if he was, whether the IJ so informed him. Further, although Bastide-Hernandez appears to have signed the waiver-of-right-to-appeal box on the back of the NTA, the district court made no finding as to whether the waiver was knowing and intelligent, and Bastide-Hernandez does not address the issue in his brief.

Additionally, questions may remain regarding actual receipt of the fax by the custodian or by Bastide-Hernandez, whether this is relevant under § 1326(d), and, if so, whether Bastide-Hernandez was prejudiced by any service-of-process deficiencies if he actually appeared by videoconference. Because the district court's basis for dismissing the indictment was invalid, the case must be remanded for further proceedings, in accordance with the holdings in this opinion. All factual matters and any additional legal challenges remain in the purview of the district court.

The district court is **REVERSED**, and the case **REMANDED**.

M. SMITH, Circuit Judge, concurring in the judgment:

In light of *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021), I agree with my colleagues that Defendant Bastide-Hernandez must satisfy the requirements of 8 U.S.C. § 1326(d) to obtain the relief he requests.  My agreement, however, ends there.  In my view, *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), and *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020), compel the conclusion that the Immigration Court lacked jurisdiction to issue a removal order because the court never cured the omission of the date and time of the hearing from Bastide-Hernandez's Notice to Appear (NTA).  Accordingly, I would reverse the district court based only on Bastide-Hernandez's failure to satisfy the requirements of § 1326(d).

## ANALYSIS

### A.

In *Karingithi*, we held that "the regulations define when jurisdiction vests" in the immigration court.  913 F.3d at 1160.  The regulations state that jurisdiction vests upon the filing of an NTA, and they require that the NTA include "the time, place and date of the initial removal hearing, where practicable."  8 C.F.R. § 1003.18(b).  When including the information in the NTA is impracticable, "the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing."  8 C.F.R. § 1003.18(b).  There is no such exception for impracticability with respect to the requirement that the NTA include "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear."  8 C.F.R. § 1003.15(b)(6).  The address of the court where the NTA will be filed may or may not be the same as

the place where the hearing will be held; the two regulations thus refer to different information.[1]  In practical terms, the address of the court where the NTA will be filed is important because that is where the alien must file his own documents, such as motions to the IJ and changes of address.

The *Karingithi* court held that because the regulations require the inclusion of the date, time, and place of the hearing only where practicable, omission of that information in the NTA does not deprive the immigration court of jurisdiction to issue an order of removal.  Importantly, *Karingithi*'s holding was specifically conditioned on a critical fact in the case: that the alien later "received [notice of the time, date, and place of the hearing] in a timely fashion."  913 F.3d at 1162.  *Karingithi* therefore *only* decided the question of whether the immigration court had jurisdiction over an alien who received the required information later, separately from the initial NTA.  It specifically reserved ruling on the question in this case, which is whether jurisdiction vests even when the alien is *never* provided with the time, date, and place of his removal hearing.  *Id.*

When applied to the separate question of the address where the NTA will be filed, *Karingithi*'s analysis dictates that jurisdiction does not vest in the immigration court if the NTA excludes the address.  If the regulations determine when jurisdiction vests, and the regulation's optional inclusion of the hearing information allows a later cure, then

---

[1] For clarity, I refer to the mandatory information (the address of the immigration court where the Service will file the NTA) as "the address," or "the address for filing" and the permissive information (the place of the hearing) as "the place" or "the place of hearing."

the regulation's mandatory information should be required for jurisdiction to vest.

Curiously, a Ninth Circuit case that addressed that issue came out the other way. In *Aguilar Fermin v. Barr*, we let stand the BIA's conclusion that omitting the address from the NTA did not deprive the immigration court of jurisdiction. We treated the address for NTA filing as synonymous with the place of the removal hearing. 958 F.3d at 895. Simultaneously, *Aguilar Fermin* relied on deference to the BIA's interpretation, deeming it not plainly erroneous. *Id.* *Aguilar Fermin* and *Karingithi* thus seem to be in tension, stemming from treating "place of the hearing" and "address of the immigration court where the NTA will be filed" as interchangeable terms despite their clearly different meanings and location in different subsections of the regulations. In my view, the relevant case is *Karingithi*, and it supports the district court's ruling.

## B

Bastide-Hernandez's NTA did not include the date or time of the hearing. Moreover, he never received that information later. Under *Karingithi*, failure to cure the omission of the date and time of the hearing renders the NTA's sufficiency an open question but *Karingithi* provides the basis for addressing that issue.

Critically, *Karingithi*'s holding was based on the fact that the alien in that case later received a notice listing the time, date, and place of the hearing, which essentially rendered harmless the NTA's omission of that information, and thus vested the immigration court with jurisdiction to issue a removal order. The court wrote, "[T]he hearing notices Karingithi received specified the time and date of her removal proceedings. Thus, we do not decide whether

jurisdiction would have vested if she had not received this information in a timely fashion." 913 F.3d at 1162.

Even *Aguilar Fermin* rests on the premise that the NTA's deficiency was later cured. In that case, the court wrote, "The question then, is what is the remedy when the address is omitted from the NTA?" and answered, "providing the alien and the government with the complete notice at a later time." *Aguilar Fermin*, 958 F.3d at 895. Following the BIA's decision in *Matter of Rosales Vargas*, 27 I. & N. Dec. 745 (B.I.A. 2020), on the question of location, *Aguilar Fermin* stated, "*Rosales Vargas* and *Karingithi* are consistent. Under both decisions, an omission of some of the information required by § 1003.14(a) and § 1003.15(b)(6) *can be cured and is not fatal*." 958 F.3d at 895 (emphasis added). Thus, *Aguilar Fermin* purported to be consistent with *Karingithi*, and *Karingithi* treated the regulatory requirements for an NTA as jurisdictional, though able to be satisfied through a subsequent NOH. Where the alien was never provided with information omitted from the NTA, nothing in *Aguilar Fermin* suggests that the immigration court obtains jurisdiction to issue a valid removal order.

## C

In my view, the majority opinion represents a clear rejection of our binding precedent. Under the majority's view, filing any document that purports to be a Notice to Appear with the Immigration Court is enough to vest jurisdiction with the IJ, even if that document does not comply with the regulatory requirements for an NTA, and those deficiencies are never cured. This interpretation ignores *Karingithi*'s holding that the regulations—and specifically the regulatory requirements for an NTA—control when jurisdiction vests.

Moreover, the majority ignores that the relevant regulation prohibits the method of service used to serve the Notice of Hearing (NOH) in this case. The regulation permits service of an NOH only by personal delivery or certified mail. 8 C.F.R. § 1003.32. Here, the Immigration Court faxed Bastide-Hernandez's NOH to his unspecified "Custodial Officer" at the detention facility where he was housed. There is no evidence in the record demonstrating that Bastide-Hernandez ever received the NOH. Our precedent dictates that the IJ lacked jurisdiction to enter a removal order under these circumstances.

## CONCLUSION

Faithful application of *Karingithi* requires us to conclude that the government failed to comply with multiple regulatory requirements—both the information that must be provided to the alien and the manner of service of process. In the simplest terms, *Karingithi* requires regulatory compliance in order for the IJ to have jurisdiction to issue a removal order. By discarding *Karingithi*, the majority allows the government to bypass the plain language of the relevant regulations and the precedent upon which courts and parties have relied.