# Matter of Josefina ARAMBULA-BRAVO, Respondent

*Decided September 23, 2021*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) A Notice to Appear that does not specify the time and place of a respondent's initial removal hearing does not deprive the Immigration Judge of jurisdiction over the respondent's removal proceedings. *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), distinguished; *Matter of Bermudez-Cota*, 27 I&N Dec. 441 (BIA 2018), and *Matter of Rosales Vargas and Rosales Rosales*, 27 I&N Dec. 745 (BIA 2020), followed.

(2) A Notice to Appear that lacks the time and place of a respondent's initial removal hearing constitutes a "charging document" as defined in 8 C.F.R. § 1003.13 (2021), and is sufficient to terminate a noncitizen's grant of parole under 8 C.F.R. § 212.5(e)(2)(i) (2021).

FOR RESPONDENT:  Murray D. Hilts, Esquire, San Diego, California

FOR THE DEPARTMENT OF HOMELAND SECURITY:  David A. Landau, Senior Litigation Coordinator

BEFORE:  Board Panel:  PETTY and MAHTABFAR, Appellate Immigration Judges; GELLER, Temporary Appellate Immigration Judge.

PETTY, Appellate Immigration Judge:

In a decision dated June 19, 2018, the Immigration Judge found the respondent removable as charged and denied her applications for relief.  The respondent has appealed from this decision.  She contends that because the Notice to Appear ("NTA") initiating removal proceedings against her did not identify the time and place of her initial removal hearing, it was insufficient both to vest the Immigration Court with jurisdiction and to terminate her parole.  We requested and received supplemental briefs from the parties and amici curiae.[1]  The respondent's appeal will be dismissed.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent, a native and citizen of Mexico, has twice been previously removed under a different name and Alien Registration Number.  Following a September 2008 arrest for unlawfully transporting noncitizens into the United States in violation of sections 274(a)(1)(A)(ii) and (v)(II) of the

---

[1]  We grant the respondent's motion to accept her late-filed supplemental brief.  We acknowledge with appreciation the briefs submitted by the parties and amici.

Immigration and Nationality Act, 8 U.S.C. §§ 1324(a)(1)(A)(ii), (v)(II) (2006), the respondent was granted parole on October 23, 2009, expiring on April 20, 2010. Within days of sentencing, on February 12, 2010, the Department of Homeland Security ("DHS") served her with an NTA. The NTA ordered the respondent to appear before an Immigration Judge at a time and date "to be set." Six days later, a notice of hearing was mailed to the respondent, providing her with the time, date, and place of her initial removal hearing, at which she appeared.

The Immigration Judge held that the respondent's parole terminated upon service of the NTA, rendering her removable as charged under section 212(a)(6)(A)(i) of the Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2018), as a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. The Immigration Judge then concluded that the respondent's criminal conviction was an aggravated felony, which rendered her ineligible for cancellation of removal and voluntary departure. *See* sections 240A(b)(1)(C), 240B(b)(1)(C) of the Act, 8 U.S.C. §§ 1229b(b)(1)(C), 1229c(b)(1)(C) (2018); *see also* section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii). The Immigration Judge also determined that she was ineligible for adjustment of status because she was inadmissible to the United States. *See* section 245(a)(2) of the Act, 8 U.S.C. § 1255(a)(2) (2018). This appeal followed.

Relying on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), the respondent contends that because her NTA did not designate the time and place of her initial removal hearing, it was insufficient to vest the Immigration Court with jurisdiction. She also submits that because, under *Pereira*, the NTA could not trigger the "stop-time" rule under section 240A(d)(1) of the Act for the purposes of cancellation of removal, it likewise could not terminate her parole. The respondent, therefore, maintains that she is not inadmissible as charged under section 212(a)(6)(A)(i) of the Act and that she is eligible for cancellation of removal, adjustment of status, and voluntary departure. We review these issues of jurisdiction, removability, and the respondent's eligibility for the requested relief de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2021). For the reasons set forth below, we affirm the Immigration Judge's decision.

## II. DISCUSSION

### A. Jurisdiction

We reject the respondent's assertion that the Immigration Court lacked jurisdiction over her removal proceedings under *Pereira* because she was served with an NTA that did not include the time and place of her initial removal hearing. In *Pereira*, the Supreme Court emphasized the narrowness of its holding, which stated that "[a] putative notice to appear that fails to

designate the specific time or place of [a] noncitizen's removal [hearing] is not a 'notice to appear under [section 239(a) of the Act, 8 U.S.C. § 1229(a) (2018),]' and so does not trigger the stop-time rule" for terminating a noncitizen's continuous physical presence for purposes of cancellation of removal. *Pereira*, 138 S. Ct. at 2114–15 (quoting section 240A(d)(1) of the Act).

We explained in *Matter of Bermudez-Cota*, 27 I&N Dec. 441, 443 (BIA 2018), that the "narrow" holding of *Pereira* specifically related to the "stop-time" rule, and we observed that "the Court did not purport to invalidate the [noncitizen's] underlying removal proceedings or suggest that proceedings should be terminated." We noted that while 8 C.F.R. § 1003.14(a) (2018) states that "[j]urisdiction vests . . . when a charging document is filed," the regulation did not specify what information must be included in the "charging document" or mandate that the document specify the time and place of the removal hearing before jurisdiction will vest. *Id*. at 444–45. Therefore, we held that an NTA that does not specify the time and place of the initial removal hearing could be remedied by the service of a subsequent notice of hearing and was sufficient to vest an Immigration Judge with jurisdiction over the proceedings. *Id*. at 447.

We further clarified in *Matter of Rosales Vargas and Rosales Rosales*, 27 I&N Dec. 745, 751–52 (BIA 2020), that certain rules regarding the initiation of proceedings in 8 C.F.R. § 1003.14 are "claim-processing" rules that do not implicate the subject matter jurisdiction of the Immigration Court. Specifically, we explained that an NTA that does not include the address of the Immigration Court where the DHS will file the charging document as required by 8 C.F.R. § 1003.15(b)(6) (2020), or include a certificate of service indicating the Immigration Court in which the charging document is filed as required by 8 C.F.R. § 1003.14(a), still vests the Immigration Court with subject matter jurisdiction. *Id*. at 753.

The United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, has deferred to the Board's interpretation in *Matter of Bermudez-Cota* and its progeny. *See Aguilar Fermin v. Barr*, 958 F.3d 887, 893–95 (9th Cir. 2020) (agreeing with *Matter of Rosales Vargas and Rosales Rosales* and holding that an NTA that does not include the time, date, or place of the removal hearing does not deprive the Immigration Court of jurisdiction); *Karingithi v. Whitaker*, 913 F.3d 1158, 1161-62 (9th Cir. 2019) (deferring to *Matter of Bermudez-Cota* and holding that the Immigration Judge had jurisdiction even though the NTA did not specify the time and date of the removal proceedings).[2] Recently, the Ninth Circuit plainly stated in

---

[2] The respondent argues the facts of her case are distinguishable from *Karingithi* because the Ninth Circuit did not address the issue of an NTA that lacked the location of the hearing. However, we note that the respondent's NTA, like the NTA in *Karingithi*, included the Immigration Court's address.

*United States v. Bastide-Hernandez*, 3 F.4th 1193, 1196 (9th Cir. 2021), that the Immigration Court's jurisdiction "vests upon the filing of an NTA, even one that does not at that time inform the alien of the time, date, and location of the hearing."

While this appeal was pending, the Supreme Court issued *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021). Several of the amici contend that, in light of *Niz-Chavez*, our decisions in *Matter of Bermudez-Cota* and *Matter of Rosales Vargas and Rosales Rosales* can no longer stand. We disagree.

Nothing in *Niz-Chavez* requires a different result. That case addressed whether an NTA that is deficient under *Pereira* for purposes of the stop-time rule can be cured by the subsequent service of a hearing notice that provides the required information. *Niz-Chavez*, 141 S. Ct. at 1479 (addressing "[w]hat qualifies as a notice to appear sufficient to trigger the stop-time rule?"). But neither *Pereira* nor *Niz-Chavez* purport to require termination of removal proceedings for lack of jurisdiction based on the absence of information required under section 239(a) of the Act. Like *Pereira*, *Niz-Chavez* addresses only the applicability of the stop-time rule—it is "the next chapter in the same story." *Id.* at 1479 (addressing whether "the government must issue a single and comprehensive notice *before it can trigger the stop-time rule*.") (emphasis added).

The only question addressed by *Niz-Chavez*—whether an NTA that is statutorily deficient for purposes of the stop-time rule can be cured by the subsequent service of a notice containing the required information—is immaterial to jurisdiction. The absence of the information required by section 239(a) is not a "jurisdictional defect." *United States v. Lira-Ramirez*, 951 F.3d 1258, 1260 (10th Cir. 2020); *see also Matter of Bermudez-Cota*, 27 I&N Dec. at 441, 444–45; *Matter of Rosales Vargas and Rosales Rosales*, 27 I&N Dec. at 751–53 (holding that the absence of the location of the Immigration Court in an NTA does not deprive the Immigration Judge of jurisdiction). Every court of appeals to have considered the question has joined the "unanimous chorus" that an NTA that lacks information required by section 239(a) of the Act is sufficient to vest the Immigration Court with subject matter jurisdiction. *Ali v. Barr*, 924 F.3d 983, 986 (8th Cir. 2019); *see also Gonçalves Pontes v. Barr*, 938 F.3d 1, 5–7 (1st Cir. 2019); *Banegas-Gomez v. Barr*, 922 F.3d 101, 110–12 (2d Cir. 2019); *Nkomo v. Att'y Gen. of U.S.*, 930 F.3d 129, 133–34 (3d Cir. 2019); *United States v. Cortez*, 930 F.3d 350, 358–62 (4th Cir. 2019); *Maniar v. Garland*, 998 F.3d 235, 242 (5th Cir. 2021); *Santos-Santos v. Barr*, 917 F.3d 486, 489–91 (6th Cir. 2019); *Ortiz-Santiago v. Barr*, 924 F.3d 956, 958, 962–64 (7th Cir. 2019); *Karingithi*, 913 F.3d at 1161–62; *Lopez-Munoz v. Barr*, 941 F.3d 1013, 1015–18 (10th Cir. 2019);

*Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1153–57 (11th Cir. 2019).[3] Several courts have reaffirmed these holdings following *Niz-Chavez*. *See Bastide-Hernandez*, 3 F.4th at 1196; *Tino v. Garland*, No. 20-3508, 2021 WL 4256185, at *1 n.2 (8th Cir. Sept. 20, 2021) (agreeing with *Maniar* and holding that *Niz-Chavez* did not disturb is prior holding that *Pereira* did not affect jurisdiction); *De La Rosa v. Garland*, 2 F.4th 685, 687 (7th Cir. 2021) (acknowledging that the time and place of the hearing "requirements are not jurisdictional"); *Maniar*, 988 F.3d at 242.

*Niz-Chavez* concerns only whether an NTA that is insufficient to stop time under *Pereira* can be remedied by service of a subsequent document. Thus, application of *Niz-Chavez* is limited to the types of relief implicated by *Pereira*. *See, e.g.*, *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1184-86 (9th Cir. 2021) (applying *Pereira* and *Niz-Chavez* to the stop-time rule for voluntary departure).

The respondent was personally served with an NTA and served 6 days later with a hearing notice providing the time and place of her scheduled hearing, for which she appeared. Following *Matter of Bermudez-Cota* and for the reasons discussed above, we conclude that the Immigration Judge had jurisdiction over these removal proceedings, and that *Pereira* does not require termination.[4] *See Matter of L-E-A-*, 28 I&N Dec. 304, 306 n.3 (A.G. 2021) (concluding that "jurisdiction . . . [was] proper even though [the] respondent's charging document lacked certain information about the first hearing").

## B. Termination of Parole

The respondent asserts that because her NTA was deficient under *Pereira*, it could not trigger the termination of her October 23, 2009, grant of parole under 8 C.F.R. § 212.5(e)(2)(i) (2021). We disagree. Under 8 C.F.R. § 212.5(e)(2)(i), the service of a "charging document" on a noncitizen constitutes "written notice of termination of parole." A "charging document" is defined in 8 C.F.R. § 1003.13 (2021) as "the written instrument which initiates a proceeding before an Immigration Judge" and may include, among

---

[3] One amicus suggests, citing *De La Rosa*, that even if not jurisdictional, section 239(a) of the Act is a mandatory claims-processing rule. As the respondent has not advanced an argument concerning section 239(a) as a claims-processing rule, and neither timely objected to the NTA nor claimed any prejudice caused by its omissions, we leave further consideration of section 239(a) as a claims-processing rule for another day. *See Matter of O-R-E-*, 28 I&N Dec. 330, 336 n.5 (BIA 2021) (noting that issues not raised on appeal are deemed waived). *Compare De La Rosa*, 2 F.4th at 687–88, *with B.R. v. Garland*, 4 F.4th 783, 792-93 (9th Cir. 2021).

[4] To the extent the respondent relies on *Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019), this case is no longer good law, as the Ninth Circuit granted rehearing en banc, *Lopez v. Barr*, 948 F.3d 989 (9th Cir. 2020), and subsequently remanded proceedings to the Board for reconsideration in light of *Niz-Chavez*. *Lopez v. Garland*, 998 F.3d 851 (9th Cir. 2021).

other documents, an NTA. Because the definition of a "charging document" does not specify compliance with the requirements of section 239(a) of the Act, *Pereira* is inapplicable. *Cf. Pereira*, 138 S. Ct. at 2114 ("By expressly referencing [section 239(a)], the statute specifies where to look to find out what 'notice to appear' means."). Therefore, the charging document in this case—a putative NTA—was sufficient to terminate the respondent's grant of parole under 8 C.F.R. § 212.5(e)(2)(i).

Both *Pereira* itself, and the Supreme Court's recent decision in *Niz-Chavez*, emphasize the centrality of a statutory reference to section 239(a) of the Act to *Pereira*'s holding. *See, e.g.*, *Pereira*, 138 S. Ct. at 2114 (noting the time and place requirements of section 239(a)(1)(G)(1) of the Act are triggered "[b]y expressly referencing [section 239(a)]" and thus the statutory definition of an NTA). In *Pereira*, the Court concluded that the statutory text of section 240A(d)(1) alone was sufficient to resolve the issue because the plain language of the statute, which expressly references a notice to appear under section 239(a) of the Act, clearly indicates that "to trigger the stop-time rule, the [DHS] must serve a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings," as required under section 239(a)(1)(G)(i) of the Act. *Pereira v. Sessions*, 138 S. Ct. at 2114 (second alteration in original) (citation omitted).

Likewise, *Niz-Chavez* further addressed the requirements for an NTA to terminate a period of continuous physical presence under section 240A(d)(1) of the Act. The Court held that, to trigger the stop-time rule for the purposes of cancellation of removal, an NTA must be a single document containing all statutorily required information specified in section 239(a) of the Act, including the time and place of the initial removal hearing. *Niz-Chavez*, 141 S. Ct. at 1480–84. Again, the Court's analysis focused on the interpretation of section 239(a) of the Act as referenced in, and in relation to, section 240A(d)(1) of the Act. *See id.*

In contrast, 8 C.F.R. § 1003.13 does not expressly reference section 239(a) of the Act. Rather, 8 C.F.R. § 1003.13 provides a definition of "charging document" that, in addition to an NTA, includes an Order to Show Cause, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien—none of which is subject to section 239(a) of the Act, which governs only NTAs. *See Niz-Chavez*, 141 S. Ct. at 1484 (distinguishing Orders to Show Cause from NTAs and explaining that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C., § 304, 110 Stat. 3009-546, 3009-587 to 3009-588 ("IIRIRA"), changed the name and required content of the charging document); *Perez-Perez v. Wilkinson*, 988 F.3d 371, 375 (7th Cir. 2021) (noting that *Pereira* does not apply to pre-IIRIRA Orders to Show Cause because they are "governed by different statutory requirements"). As *Pereira* does not apply to Orders to Show Cause, it cannot apply wholesale to the broader category of "charging

documents" under 8 C.F.R. § 1003.13, which includes Orders to Show Cause. *See Perez-Perez*, 988 F.3d at 375.

If 8 C.F.R. § 1003.13, like the statutory provision at issue in *Pereira,* referenced "a notice to appear *under section 239(a)*," then *Pereira* might apply to termination of parole. *See Posos-Sanchez*, 3 F.4th at 1184–86 (applying *Pereira* and *Niz-Chavez* to voluntary departure based on an express reference to section 239(a), and noting that "the Supreme Court has already told us what Congress meant by 'under section [239(a)]'" (quoting section 240A(d)(1)(A) of the Act)). The regulation governing termination of parole, however, references only a "charging document." 8 C.F.R. § 212.15(e)(2)(i). Likewise, 8 C.F.R. § 1003.13 provides only that a "charging document" includes a "Notice to Appear" without further modifying language or any statutory reference. We have previously held that a putative NTA that lacks information required by section 239(a) remains a "charging document" for purposes of vesting jurisdiction in the Immigration Court under 8 C.F.R. § 1003.14(a). *Matter of Bermudez-Cota*, 27 I&N Dec. at 444–45 (citing 8 C.F.R. § 1003.14(a)); *see also Matter of Rosales Vargas and Rosales Rosales*, 27 I&N Dec. at 748–49. Because both 8 C.F.R. § 1003.14(a) (discussing jurisdiction and commencement of proceedings) and 8 C.F.R. § 212.5(e)(2)(i) (discussing termination of parole) refer to a "charging document," which is defined at 8 C.F.R. § 1003.13, we now conclude that a putative NTA lacking the time and place of the initial hearing similarly remains a "charging document" for purposes of terminating parole.

We recognize that the charging document at issue here is, in fact, an NTA—as opposed to one of the other types of charging documents listed in 8 C.F.R. § 1003.13—and that an NTA has a statutory definition. *See* section 239(a) of the Act. But there is no reference to section 239(a) in 8 C.F.R. § 1003.13. For the reasons discussed below, we decline to assume an implicit reference in the face of regulatory silence. *See Gonçalves Pontes*, 938 F.3d at 5–7 (holding that the requirements of the section 239(a)(1)(G)(i) of the Act do not apply to 8 C.F.R. § 1003.14 because the provisions "speak to different audiences"); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980) ("[Regulatory] silence . . . may . . . betoken permission or, perhaps, considered abstention from regulation. . . . Accordingly, caution must temper judicial creativity in the face of legislative or regulatory silence."). We believe caution is warranted here.

"[P]arole authority is . . . exercised exclusively by the DHS." *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771, 777 n.5 (BIA 2012). Immigration Judges possess no authority to review decisions granting, denying, or terminating parole. *See Torres v. Barr*, 976 F.3d 918, 931–32 (9th Cir. 2020); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("The parole process is purely discretionary and its results are unreviewable by [Immigration Judges]."). Furthermore, as termination of parole is effective upon service of the notice of termination, no hearing is required.

*See* 8 C.F.R. § 212.5(e)(2)(i); *Matter of Castillo-Padilla*, 25 I&N Dec. 257, 261 (BIA 2010). Accordingly, notice of the time and place of an initial removal hearing, while essential to the NTA's function in commencing removal proceedings, is not essential to the NTA's function as a notice of termination under 8 C.F.R. § 212.5(e)(2)(i). *Cf.* section 240(b)(5), 8 U.S.C. § 1229a(b)(5) (providing that a noncitizen have notice of the removal hearing before being ordered removed in absentia).

Furthermore, because no hearing is required to terminate parole, the function of the section 239(a) requirements in facilitating the right to counsel is also diminished. In *Pereira*, the Supreme Court gave considerable weight to the importance of providing the time and place as required by section 239(a) in order to facilitate other rights—notably the statutory right to a minimum of 10 days between service of the NTA and the initial hearing which, in turn, provides noncitizens an opportunity to secure the assistance of counsel. *See Pereira*, 138 S. Ct. at 2114–15 (recognizing the requirements of section 239(a) facilitate rights granted by section 239(b)(1)). But because parole decisions are neither made nor reviewed by Immigration Judges, *Torres*, 976 F.3d at 931–32; *Rodriguez*, 715 F.3d at 1144; *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. at 777 n.5, and because they are effective upon service, 8 C.F.R. § 212.5(e)(2)(i); *Matter of Castillo-Padilla*, 25 I&N Dec. at 261, section 239(a) does not facilitate a right to counsel in this context.

Instead of allowing noncitizens to prepare for a contested hearing, the importance of an NTA as a notice of termination is in definitively communicating the DHS's intent with respect to parole status. Regulations provide that parole "shall" be terminated, inter alia, "[w]hen . . . neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also Hassan v. Chertoff*, 593 F.3d 785, 789–90 (9th Cir. 2010). Unless otherwise specified, a "charging document will constitute written notice of termination of parole." 8 C.F.R. § 212.5(e)(2)(i). A charging document presumptively terminates parole because an intent to remove a noncitizen necessarily reflects a determination that the continued presence of that individual is no longer warranted.

Extending *Pereira* to termination of parole could also potentially lead to difficulties in administration. *See City of Portland v. United States*, 969 F.3d 1020, 1038 (9th Cir. 2020) ("Administrability is important."); *see also Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 58-59 (2011) (holding that an agency's rule based on administrability concerns "easily" satisfies a step-two analysis under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Ideally, the documentation of lawful status is clear and unambiguous. Adopting a rule that the effectiveness of an NTA in terminating parole turns on whether it contains information concerning a subsequent, unrelated removal hearing—at which the Immigration Judge would have no authority to review the termination of

parole itself—is likely to cause confusion for both parolees and immigration officers. We are not mandated to extend *Pereira* to this context, and we conclude it would be unwise to do so.

Applying the standards outlined above, we affirm the Immigration Judge's determination that the respondent is removable from the United States. For the reasons previously discussed, we reject the respondent's argument that, because the NTA was insufficient to trigger the stop-time rule under *Pereira*, it could not terminate her prior grant of parole. The Immigration Judge correctly determined that, once served with an NTA, the respondent's parole status was terminated and her status reverted to her prior status. *See* 8 C.F.R. § 212.5(e)(2)(i); *Matter of Castillo-Padilla*, 25 I&N Dec. at 261. The Immigration Judge found that the evidence, including information contained on the Form I-213, Record of Deportable/Inadmissible Alien, and the respondent's own statements on her relief applications, shows that she last entered the United States in 2004 without being admitted or paroled. *See Matter of Gomez-Gomez*, 23 I&N Dec. 522, 524 (BIA 2002) (holding that in the absence of evidence of inaccuracy, coercion, or duress, a Form I-213 "is inherently trustworthy and admissible as evidence to prove alienage or deportability"). Although the respondent later testified that her last entry was in 2002 while under parole status, the Immigration Judge found this testimony lacked credibility.

We review the Immigration Judge's credibility determination for clear error and are not persuaded by the respondent's argument that the Immigration Judge erred in finding her testimony not credible. *See* 8 C.F.R. § 1003.1(d)(3)(i). The Immigration Judge properly considered the totality of the circumstances and reasonably relied on the discrepancies between the respondent's testimony and the documentary evidence regarding her date of last entry into the United States. *See* section 240(c)(4)(C) of the Act. The Immigration Judge also noted the respondent's untruthfulness to the DHS, particularly with regard to her prior two removals under a different name and Alien Registration Number. Likewise, the Immigration Judge properly considered the respondent's explanations, but did not find them persuasive. We discern no clear error in the Immigration Judge's adverse credibility finding. *See Matter of D-A-C-*, 27 I&N Dec. 575, 579 (BIA 2019) ("An Immigration Judge 'is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record.'" (citation omitted)). As such, upon termination of her parole, the respondent's status reverted to that of a noncitizen present without being admitted or paroled.

Additionally, we are not persuaded by the respondent's argument that she was issued a visa sometime after her criminal conviction, which constituted an admission to the United States. The respondent has not produced evidence to show that she was, in fact, issued a visa and counsel's assertions are insufficient to establish the legality of the respondent's last entry. *See Matter of Ramirez-Sanchez*, 17 I&N Dec. 503, 506 (BIA 1980) (explaining that the

assertions of counsel are not evidence).[5]    Accordingly, we affirm the Immigration Judge's determination sustaining the charge of removability under section 212(a)(6)(A)(i) of the Act.

## C.  Applications for Relief

We affirm the Immigration Judge's determinations that the respondent is statutorily ineligible for cancellation of removal and voluntary departure based on her aggravated felony conviction.  Contrary to the respondent's argument, the Immigration Judge properly concluded that the respondent's criminal conviction for unlawful transportation of noncitizens into the United States in violation of section 274(a)(1)(A)(ii) of the Act is an aggravated felony.    The Ninth Circuit has held that the respondent's offense is categorically a conviction for an aggravated felony under section 101(a)(43)(N) of the Act.  *See United States v. Galindo-Gallegos*, 244 F.3d 728, 734 (9th Cir. 2001), *amended by* 255 F.3d 1154 (9th Cir. 2001); *see also Matter of Ruiz-Romero*, 22 I&N Dec. 486, 492 (BIA 1999).  Therefore, the Immigration Judge properly concluded that the respondent's offense is an aggravated felony that renders her statutorily ineligible for cancellation of removal and voluntary departure.    *See* sections 237(a)(2)(A)(iii), 240A(b)(1)(C), 240B(b)(1)(C) of the Act.

We also affirm the Immigration Judge's denial of the respondent's application for adjustment of status.  For the reasons discussed above, the respondent did not establish that she is eligible for adjustment of status under section 245(a) of the Act because she was not "inspected and admitted or paroled into the United States" and is not "admissible to the United States."[6]

Because the respondent was not eligible for adjustment of status before the Immigration Judge, she also did not establish good cause for a continuance of these removal proceedings.  *See* 8 C.F.R. § 1003.29; *see also Matter of L-A-B-R-*, 27 I&N Dec. 405, 412 (A.G. 2018) (explaining that the "likelihood that the collateral relief will be granted and will materially affect the outcome of the removal proceedings" is the primary consideration when determining whether to grant a continuance); *Matter of Villarreal-Zuniga*, 23 I&N Dec. 886, 891 (BIA 2006) ("[A] decision denying [a] motion for

---

[5]   Even if the NTA did not terminate the respondent's parole status, the respondent would still have reverted back to her previous unlawful status upon expiration of her parole in April 2010.  *See* 8 C.F.R. 212.5(e)(1) (providing that parole automatically terminates upon expiration of the authorized period and no written notice is required).

[6]   Even if the respondent had established that she was admitted or paroled, she would still be inadmissible under sections 212(a)(9)(A)(i) and (C)(i)(II) of the Act because she unlawfully reentered the United States following her two prior removals.  *See Matter of Torres-Garcia*, 23 I&N Dec. 866, 871–73 (BIA 2006) (noting that an individual who reenters or attempts to reenter the United States after removal is permanently inadmissible absent a grant of permission to reapply for admission).

continuance will not be reversed unless the [noncitizen] establishes that the denial caused him actual prejudice and harm and materially affected the outcome of his case." (second alteration in original) (citation omitted)). Accordingly, the respondent's appeal is dismissed.

**ORDER:** The appeal is dismissed.